329 A.2d 881

## COMMONWEALTH OF Pennsylvania

v.

## Michael WILSON, Appellant.

Supreme Court of Pennsylvania.

Dec. 5, 1974.

Rehearing Denied Jan. 22, 1975.

2

**4**

Kalvin, Kahn, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief Appeals Div., A. L. Becker, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION IN SUPPORT OF
## AFFIRMANCE

POMEROY, Justice.

Appellant was convicted by a jury of first degree murder and sentenced to life imprisonment. Post-trial motions were denied by the court en banc and appellant has now filed this direct appeal.[1]

The evidence adduced at trial established that on the night of October 10, 1970, the appellant shot and killed one Gregory Davis on the corner of 16th and Thompson Streets in Philadelphia. The victim apparently was a member of a street gang which was a rival to the one to which appellant belonged, but at the time of the shooting was unknown to the appellant. Based on information received by the police from two eyewitnesses that it was appellant who had fired the fatal shot, he was arrested two days later and charged with murder.

Three errors are advanced in support of reversal. Two of these relate to the failure to exclude from evidence appellant's confessions, one oral and one written; the third alleged error relates to the refusal of the trial judge to charge as the appellant requested on the issue of the weight to be given an oral confession.

First, appellant contends that his oral confession should have been suppressed because it was involuntary. The principal ground for this conclusion is that appellant was a juvenile (17 years old) and thus was incapable of making a voluntary, knowing and intelligent waiver of his constitutional rights. The inculpatory oral statement in question was made shortly after Wilson's arrest at his home at approximately 7:00 A.M. on October 12, 1970. According to the arresting officer, appellant had been given his *Miranda* warnings, and had waived his rights. The statement Wilson then made to the officer was that

1. Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202(1).

▋▋▋▋▋▋▋▋▋

he hadn't shot anyone, but that he would show the police where the gun was hidden. With appellant's assistance, the gun was soon located by the police.

▋▋ The Court has hitherto rejected the argument that it should adopt a prophylactic rule that a sixteen or seventeen year old juvenile lacks the ability to understand fully and to waive his constitutional rights without the presence and advice of a more mature person. *Commonwealth v. Moses,* 446 Pa. 350, 287 A.2d 131 (1971).[2] We have not been persuaded that this conclusion was unwarranted or unwise. As we said in *Moses,* "to declare as a matter of law that a sixteen-year-old, regardless of maturity and intelligence, is unable to fully understand when he is informed of his constitutional rights and may not by himself waive his right to counsel before being questioned by the police would be to ignore reality and the sophistication of the average sixteen-year-old in these days and times." *Id.* at 354, 287 A.2d at 133. The proper approach, instead, is for the suppression court (or the trial court if the issue is raised at trial) to scrutinize the totality of the circumstances to determine whether the statement was voluntary and whether the defendant was capable of waiving his rights. *Commonwealth v. Moses, supra; Commonwealth v. Darden,* 441 Pa. 1, 271 A.2d 257 (1970); *Commonwealth v. Taper,* 434 Pa. 71, 253 A.2d 90 (1969).

▋ The appellant argues that a finding of involuntariness is also dictated by the totality approach; we are not able to agree. Appellant was literate, of average intelligence, and had completed the ninth grade in school. There was no evidence that at the time he made the incriminating statement he was under the influence of alcohol or any narcotic, or that he was not alert and respon-

2. *See also Commonwealth v. Porter,* 449 Pa. 153, 159, 295 A.2d 311 (1972). (Opinion of this writer announcing the decision of the Court).

sive. Although the appellant testified that he had not been advised of his constitutional rights and that he had been threatened and actually abused by one of the arresting officers, there was no evidence to support these charges, and they were not believed by the suppression judge. Considering the totality of the circumstances, we agree with the court below that the defendant was capable of waiving and did voluntarily waive his constitutional rights and voluntarily made the inculpatory oral statement.

The formal statement given at police headquarters, like the oral one, is challenged on the ground of appellant's youth, and also because it was the product of the earlier oral statement.[3] What has been said above is dispositive of these contentions: since the oral statement was not invalid, it cannot have impermissibly influenced the written statement; and the juvenile status of appellant is of no greater or less importance with respect to the written statement than it is with respect to the oral one.

■■ Beyond these points, however, appellant asserts that the formal written confession should have been suppressed because of the delay between his arrest and arraignment. He contends that because this delay was "unnecessary" it violated Rule 118 of our Rules of Criminal Procedure,[4] and the written statement should be suppressed under our decision in *Commonwealth v. Futch*, 447

---

**3.** The challenge to the written confession is made and must be considered because the oral statement given at 7:00 a. m., while inculpatory, was not conclusive in implicating appellant; although he said that he knew where the murder weapon was located, Wilson denied that he had shot anyone. In the later written statement appellant admitted that it was he who had shot Gregory Davis.

**4.** Rule 118, Pa.R.Cr.P., has been renumbered in pertinent part as Rule 130. 19 P.S. Appendix (Supp.1974–1975). The rule provides that a defendant is to be brought before a magistrate without "unnecessary delay" following his arrest for the purpose of filing a complaint against him and for the purpose of preliminary arraignment.

Pa. 389, 290 A.2d 417 (1972).[5]  We there held that evidence obtained during a period manifestly unrelated to administrative processing or a brief exculpatory investigation, may not be admitted.[6]

In *Commonwealth v. Futch, supra,* this Court held that a violation of Rule 118 requires the suppression of "all evidence obtained during 'unnecessary delay' ex-

5. The delay argument is also based on the Act of July 12, 1913, P.L. 711, § 9, as amended, 17 P.S. § 692.  That act provides that upon arrest, juveniles in Philadelphia County are to be brought "immediately" before a juvenile court judge.  By its terms, however, that statute applies only to "dependent, delinquent, or neglected children under the age of *sixteen years.*" (emphasis added). Since the appellant in this case was seventeen at the time of his arrest, the statute was not applicable here.  There is thus no need to consider whether it is that statute or Pa.R.Crim.P. 118 (now 130) which should govern on the question of prompt arraignment. *Cf.* Geiger Appeal, 454 Pa. 51, 309 A.2d 559 (1973). *See also* the new Juvenile Act, 11 P.S. § 50–101 et seq.

6. Although the appellant did not raise the claim of unnecessary delay until his appeal before this Court, we have held that this fact alone will not preclude our consideration of this issue under the circumstances here present. *Commonwealth v. Hancock,* 455 Pa. 583, 586 n. 2, 317 A.2d 588, 590 n. 2 (1974); *Commonwealth v. Wayman,* 454 Pa. 79, 82–83 n. 1, 309 A.2d 784, 786 n. 1 (1973).
   At the suppression hearing and on post-trial motions, the appellant did challenge the admissibility of the confession on the ground that it was involuntary. *See* the discussion of this issue *supra.*  Under the analysis of a majority of the Court in *Wayman* and *Hancock, supra,* this was sufficient to preserve the issue of unnecessary delay for appeal. *But see, Commonwealth v. Reed,* 458 Pa. 8, 326 A.2d 356 [filed October 16, 1974]; *Commonwealth v. Terry,* 457 Pa. 185, 321 A.2d 654 (1974) (concurring opinion of Pomeroy, J., joined by Mr. Chief Justice Jones and Mr. Justice Eagen).
   The defendant in this case was arrested in October, 1970 and was brought to trial in June, 1971. *Futch* was not decided until April, 1972.  While the author of this opinion together with Mr. Chief Justice Jones and Mr. Justice Eagen, continue to adhere to the belief expressed in the dissents in *Commonwealth v. Johnson,* 458 Pa. 425, 327 A.2d 618 [filed October 16, 1974], *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974), *Commonwealth v. Dixon,* 454 Pa. 444, 448, 311 A.2d 613, 615 (1973), and *Commonwealth v. Dutton,* 453 Pa. 547, 551, 307 A.2d 238, 240 (1973), that *Futch* should not be retroactively applied, the majority of the Court is of the contrary view. *Commonwealth v. Johnson, supra; Commonwealth v. Peters,* 453 Pa. 615, 306 A.2d 901 (1973); *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973).

cept that which . . . has no reasonable relationship to the delay whatsoever." 447 Pa. at 394, 290 A.2d at 419. In *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973), the Court emphasized that *"Futch* did not, and we do not here establish a per se rule that all evidence obtained during an unnecessary delay be excluded. It is only upon the defendant's showing of prejudice from the delay, i. e., a nexus between the delay and the challenged evidence that he is entitled to relief." 451 Pa. at 245, 301 A.2d at 703. *See also Commonwealth v. Rowe,* Pa., 327 A.2d 358 (1974). From these and other decisions, it is clear that in cases where violation of Rule 118 is charged the trial court in the first instance, and appellate courts in the event of appeal, must determine whether in fact there was an "unnecessary delay" and if there was, whether there was any causal relationship between the delay and the evidence obtained.

In determining whether a delay is or is not necessary, this Court has several times adhered approvingly to the guidelines laid down by Chief Justice, then Judge, Burger in the case of *Adams v. United States,* 130 U.S.App.D.C. 203, 399 F.2d 574 (1968) : "Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested." 399 F.2d. at 579 (concurring opinion). *See Commonwealth v. Wayman,* 454 Pa. 79, 84–85 n. 4, 309 A.2d 784, 787 n. 4 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 245, 301 A.2d 701, 703 (1973); *Commonwealth v. Futch,* 447 Pa. 389, 392, 290 A.2d 417, 418 (1972).

In the case at bar, as stated above, the appellant was arrested at approximately 7:00 A.M. on the morning of October 12, 1970. The time of preliminary arraignment is not altogether clear from the record, although it

must have been some time after, probably soon after, 4:05 P.M. the same day, since that is the hour at which the police chronology sheet ends. The first question is whether this period of at least nine hours may be characterized as "unnecessary delay." There is no doubt that the time which elapsed was used in part to enable the police to locate the murder weapon and primarily to obtain and record the defendant's voluntary confession. (In his statement Wilson implicated several other persons in connection with the murder, and, part of the time taken to prepare the statement was spent in identifying, describing and giving the addresses of those individuals). We cannot characterize a time span so utilized as "unnecessary delay" within the meaning of Rule 118. Such purposes fall within the guidelines suggested in *Adams v. United States*, supra, and adopted by this Court. See also the recent case of *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974), where we said: "[I]t may be permissible to delay the arraignment of an arrested individual if he initially indicates a willingness to cooperate, in order to obtain information from him about co-suspects or other evidence so that such co-suspects or evidence might be speedily located while still in the vicinity . . . ." 321 A.2d at 613.

Even were the total time lapse prior to arraignment to be characterized as "unnecessary", however, we are satisfied that the written confession was not "reasonably related" to the delay. *Futch, supra,* 447 Pa. at 394–396, 290 A.2d at 419. The sequence of events is recapitulated in the margin.[7] Here our focus must be on the time

---

7. 7:00 A.M.—oral inculpatory statement given after waiver of rights; appellant placed under arrest.

7–7:30 A.M.—weapon searched for and found, and appellant transported to police administration building.

7:30–9:40 A.M.—appellant allowed to rest and use the bathroom; given water and cigarettes.

9:40 A.M.—constitutional rights again waived.

9:50 A.M.–10:40 A.M.—Interrogation resulting in more detailed informal statement.

span of slightly over four hours between arrest and the commencement of a formal statement. This length of time stands in sharp contrast to the extended delays which have marked the cases where application of the exclusionary rule was held to be warranted.[8] The present case is similar to *Commonwealth v. Terry,* 457 Pa. 185, 321 A.2d 654 (1974). There, the defendant was initially questioned concerning the murder of which he was ultimately found guilty at 11:45 A.M., following his arrest on an unrelated charge the previous day. Questioning formally began at 1:00 P.M. and shortly thereafter he orally confessed and a written statement was prepared, but not signed. The defendant was then given various breaks and questioned again. At 5:00 P.M., the giving of a formal statement was commenced. After reviewing all of these facts, we found no "causal relationship between the delay in arraignment and the confession." 321 A.2d at 655.[9] As in *Terry,* so in this case: the defendant at the

10:40 A.M.—meal; bathroom.
11:22 A.M.–1:42 P.M.—preparation and signing of formal statement (twice interrupted for a total of 14 minutes).
4:05 (or soon thereafter)—preliminary arraignment.

8. In *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417, *supra,* the delay between arrest and arraignment was fourteen hours. The evidence challenged there—the identification of the defendant at an uncounseled lineup—was obtained thirteen hours after arrest. In *Commonwealth v. Tingle, supra,* the time between arrest and arraignment was 21½ hours and the challenged confession was obtained near the end of that period. In *Commonwealth v. Wayman, supra,* the delay was some 24 hours and again the statement was not given until just prior to arraignment. In *Commonwealth v. Dutton, supra,* the delay was 26 hours, with the challenged statement being given some 8 hours after arrest and after the defendant had initially denied any involvement in the crime. In *Commonwealth v. Dixon, supra,* the defendant's confession, which he refused to sign, was not made until after he had been unnecessarily detained without arraignment for some 16 hours. In *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974), the defendant initially denied any involvement in the crime; made an oral admission some seven hours after arrest; did not give a formal statement until 24 hours after arrest; and was not arraigned until 27 hours after arrest.

9. *See also Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 [filed October 16, 1974] in which we held that where the defend-

inception of questioning at about 9:40 A.M. indicated his complicity in the crime charged, and the period between that time and the taking of the formal statement was merely to allow the defendant to rest and to permit of further questioning.

Appellant's final contention is that the trial court erred in refusing to charge that "[a]n oral confession based on the words, understanding, and memory of an auditor, is the weakest and most suspicious kind of evidence." The prosecution's case was not dependent upon the appellant's oral admissions; all the evidence sufficient to convict was contained in the formal written statement. The point was properly refused.

EAGEN, J., joins.

## OPINION OF THE COURT

PER CURIAM.

The Court being equally divided, the judgment of sentence is affirmed.

POMEROY, J., filed an opinion in support of affirmance in which EAGEN, J., joined.

O'BRIEN, J., concurred in the result.

JONES, C. J., took no part in the consideration or decision of this case.

ROBERTS, NIX and MANDERINO, JJ., filed a memorandum in support of reversal and grant of new trial.

---

ant gave an oral statement fully admitting his guilt within two hours after his arrival at police headquarters and immediately after the onset of questioning, the fact that he was not arraigned until 13 hours after arrest would not require the suppression of that statement or a subsequent formal statement which only reiterated the information contained in the oral statement. It was concluded that the "appellant was not prejudiced by the delay."

## MEMORANDUM IN SUPPORT OF REVERSAL AND GRANT OF NEW TRIAL

ROBERTS, NIX and MANDERINO, Justices.

Since the opinion in support of affirmance states the views of two justices, we deem it unnecessary to detail our dissent and disagreement with those views.

We would reverse and award a new trial.