393 A.2d 1141

**COMMONWEALTH of Pennsylvania**

v.

**Michael WILSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 19, 1978.

Decided Oct. 5, 1978.

Reconsideration and Oral Argument Denied Nov. 20, 1978.

Allan M. Dabrow, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven Goldblatt, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Michael Wilson, was convicted by a jury of murder of the first degree for the shooting death of Gregory Davis. Post-verdict motions were denied and a direct appeal was filed to this court where we affirmed by an equally-divided court. *Commonwealth v. Wilson*, 463 Pa. 1, 329 A.2d 881 (1974). Counsel told appellant he would file a petition for reargument; however, no such petition was filed within the required time.

Appellant subsequently filed a *pro se* petition under the Post Conviction Hearing Act (PCHA).[1] Counsel was appointed and an amended PCHA petition was filed. Following a hearing, the court below granted appellant permission to file a petition for reargument *nunc pro tunc*,[2] but denied all other requested relief. Appellant now appeals from that portion of the order denying relief.

Appellant claims that he has been denied his constitutional right to effective assistance of counsel. For reasons hereinafter stated, we do not believe appellant is entitled to relief.

In *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352 (1967), we stated:

". . . our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the

1. Act of Jan. 25, 1966, P.L. 1580, § 1, 19 P.S. § 1180–1, et seq.

2. Appellant filed the petition for reargument *nunc pro tunc*, which we denied.

balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (Emphasis in original.)

As a corollary, counsel is not ineffective for failing to raise baseless or frivolous issues. *Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974). It is with this standard in mind that we must review appellant's allegations of ineffective assistance of counsel.

■ Appellant first claims that trial counsel was ineffective for failing to object to portions of the prosecutor's closing remarks, which appellant believed to be inflammatory. The comments concern appellant's failure to take the stand and alleged expressions of the prosecutor's personal beliefs. We believe, however, that appellant failed to preserve this question for appellate review.

In his amended PCHA petition, appellant made a general allegation that trial counsel was ineffective for failing "to raise and preserve on appeal issues of inflammatory summation and other prosecution misconduct." At the hearing, appellant's counsel made no specific argument on this claim. When counsel filed a brief in support of the PCHA petition eleven days after the hearing, specific instances of alleged inflammatory summation were alluded to for the first time. Under these circumstances, we believe appellant has waived this claim.

In *Commonwealth ex rel. Washington v. Maroney, supra*, 427 Pa. at 608, 235 A.2d at 354, we stated:

"As with other assertions of a denial of constitutional rights in post conviction proceedings, the burden remains throughout with the prisoner to demonstrate any constitutional deprivation."[3]

Once a prisoner has made such a showing, the Commonwealth can, of course, call witnesses to rebut his allegations. More specifically, in this case, once appellant would have shown instances where it seemed that trial counsel should

---

**3.** The Post Conviction Hearing Act provides:

"If a petition alleges *facts* which if proven would entitle the petitioner to relief, the court shall grant a hearing which may

have objected, the Commonwealth could then have called trial counsel to the stand to explain his failure to object, thus showing either his effectiveness or lack of effectiveness.

Because of appellant's failure to allude to specific instances of inflammatory summation before the PCHA hearing, the Commonwealth never had the opportunity to call trial counsel to explain his actions. For reasons similar to this, *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), and its progeny require a certain degree of specificity to preserve issues for appellate review, and we do not believe that such specificity was present in this case until the brief was filed. For reasons previously stated, we believe such specificity must be met before the evidentiary hearing and not after.[4] As we stated in *Commonwealth v. Mitchell*, 477 Pa. 274, 383 A.2d 930 (1978):

"We believe these claims are waived, because appellant, by waiting until after the hearing, denied the Commonwealth the opportunity to defend against assertions raised at such a late date."

■ Appellant next claims that trial counsel was ineffective for failing to object to portions of the trial court's charge to the jury. This point, however, was not raised in the counseled petition and is thus waived. *Commonwealth v. Mitchell, supra,* and Pa.R.Crim.P. 1506(4).

Appellant finally claims that trial counsel was ineffective for failing to question prospective jurors about a possible bias they may have had about gangs and gang-related killings. Counsel did ask one juror, "How do you feel about

extend only to the issues raised in the petition or answer." 19 P.S. § 1180–9. (Emphasis added.)
We allude to this section because appellant advanced only legal theories until specific facts were given in the brief in support of his petition.

4. In *Commonwealth v. Williams*, 476 Pa. 557, 383 A.2d 503 (filed January 26, 1978), we held that an issue can be preserved for appellate review by filing post-verdict motions and then point to specific instances by either briefing or arguing those points. In *Williams*, however, strictly legal issues were involved with no evidentiary hearing required, and because of this fact, we believe *Williams* is inapposite to the instant case.

gang warfare?" The trial court sustained the prosecutor's immediate objection.

In *Commonwealth v. Futch*, 469 Pa. 422, 426–27, 366 A.2d 246, 248 (1976), we stated:

"The singular purpose of voir dire examination is to secure a competent, fair, impartial and unprejudiced jury. In pursuit of that objective, the right of a litigant to inquire into bias or any other subject which bears on the impartiality of a prospective juror has been generally recognized. Nevertheless, the scope of voir dire examination rests in the sound discretion of the trial judge and his decisions will not be reversed unless there is an abuse of that discretion."

In *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973), defense counsel proposed to ask prospective jurors if they had any prejudice against either the use of alcoholic beverages or psychiatric testimony. The court refused these questions, and we upheld the refusal, stating:

"[T]he purpose of voir dire is not to determine in advance what a juror's attitude will likely be if certain facts develop during trial. As we recognized above, the purpose of the voir dire examination is to disclose qualifications or lack of qualifications of a juror and in particular to determine whether a juror has formed a fixed opinion as to the accused's guilt or innocence." Id., 452 Pa. at 135–36, 305 A.2d at 8.

As in *Johnson*, appellant in this case was not entitled to determine in advance a juror's attitude about gang-related incidents. As pursing this line of questioning would have been useless, counsel was not ineffective in this respect. *Commonwealth v. Rice, supra.*

Order affirmed.

MANDERINO, J., files a dissenting opinion in which ROBERTS, J., joins.

MANDERINO, Justice, dissenting.

I dissent. The majority holds that appellant has waived any claim that trial counsel was ineffective for not objecting

to certain remarks made by the assistant district attorney during closing argument to the jury. The majority asserts that appellant's post-conviction counsel failed to preserve this issue, however, the issue was specifically raised in counsel's written PCHA petition; was raised at the PCHA hearing; was briefed by appellant's post-conviction counsel and answered by the prosecution; and was considered by the PCHA court.

Appellant's amended PCHA petition stated, in part,

"Counsel was ineffective in that he failed to raise and/or preserve basic and fundamental issues and errors throughout the selection of the jury, as well as at the trial and at posttrial and appellate proceedings, all of which were without a rational basis, nor which could be considered trial strategy designed to effectuate the best interests of the client: specifically, no exception to denial of request to ask voir dire questions relating to gang attitude; counsel failed to raise on appeal the issue of self-defense; counsel failed to present and argue, at the time of trial, and further failed to raise, on appeal, the defense of mitigation, based on defendant's consumption of wine prior to the alleged incident, all of which was discussed by the Assistant District Attorney at the time of trial; *counsel failed to raise and preserve on appeal issues of inflammatory summation and other prosecutorial misconduct.*" (Emphasis added.)

The entire record of the trial,—including the prosecutor's allegedly inflammatory remarks—was incorporated by reference and made part of the record of the PCHA hearing by joint motion of counsel and acquiescence of the Court. In its Memorandum Opinion denying, in part, appellant's requested post-conviction relief, the court stated,

"An evidentiary hearing was held at which time defendant was represented by counsel other than his trial counsel. *After a careful consideration of the entire record* and the applicable law, we are convinced that defendant's petition must be granted in part and denied in part." (Emphasis added.)

In making that decision, based on the record, the post-conviction court had not only the benefit of appellant's petition, quoted above, but also, appellant's Memorandum of Law which specifically raised the various allegedly inflammatory statements, as well as a letter from the prosecution replying to appellant's memorandum. In this letter, the prosecution did not contend that the issue was waived because not specifically raised at the hearing, but instead, addressed the merits of appellant's allegation, saying,

"Petitioner claims that his trial counsel failed to object to the summation of the prosecutor, which he now alleges was improper. An examination of the summation of the prosecutor as a whole shows that, contrary to petitioner's claim, the prosecutor's summation was reasonable under the circumstances. Moreover, any error in the prosecutor's charge, in view of the direct evidence of petitioner's guilt, constituted harmless error. Compare this summation with that found in *Commonwealth v. Martin Valle*, —— Pa.Superior Ct. ——, No. 1406, Oct. Term, 1975 (filed April 22, 1976). The remarks here were well within the reasonable bounds of advocacy."

Clearly therefore, appellant's post-conviction counsel did all that was necessary to preserve the issue for our review.

Furthermore, my examination of the PCHA proceeding (including the prosecution's remarks) convinces me that trial counsel could have had no reasonable basis for failing to object to them and therefore appellant was denied the effective assistance of counsel at trial. The district attorney's summation to the jury included the following statements,

"(1) 'He didn't even know who he was going to go out and kill that night. He just wanted to go out and kill somebody.' (N.T. 137).

(2) 'Ladies and Gentlemen of the jury, if the Commonwealth did not produce any more evidence than Ralph Pippin, Michael Wilson would be guilty of murder.' (N.T. 141).

(3) 'I'm going to ask you to think when I am reading this, have you ever heard of anything more premeditated, anything more willful, anything more deliberate than asking for a gun, walking up a street, knowing its loaded, looking for somebody, you are not sure who, to kill and then going ahead and pumping two bullets into him and then running away? It's not an argument. It's more of those things, . . . This is a pre-meditated, willful, deliberate killing.' (N.T. 159–160).

(4) 'I want to leave you with one thought. I have a feeling that each of you in this jury box has been thinking in the last two days where was my loved one on October 10; . . . What if he happened to be on the corner of 16th and Thompson Streets, in Philadelphia, instead of Gregory Davis? . . . That person would have been dead just like Gregory Davis is dead today, because Michael Wilson didn't care who he shot that night. He was going to get somebody from Seybert Street. . . . Michael Wilson killed Gregory Davis. He killed him premeditately, willfully, deliberately.' (N.T. 162–163).

(5) 'Now it is true, as Mr. Kahn said, and I am sure Judge Weinrott will instruct you, that the defendant has an absolute constitutional right not to take the stand . . However, the defense called no other witnesses and by that, of course, I mean friends to contradict anything you heard over the last two days . . . There is only one version of this case, the true version, it's the Commonwealth's version and that's the only evidence in this case." (N.T. 139).

(6) 'Mr. Kahn would have you believe that the defendant might not have known what he was doing; might have made an involuntary statement. You will see C–8 which Detective Richardson, it's uncontradicted, of course, said that Michael Wilson not only understood but, in fact, wrote in his answers in his own handwriting in this Exhibit C–8. . . ." (N.T. 152).

(7) 'Now, very briefly, defense counsel has argued, even though there is no defense evidence in this case, that Michael Wilson's statement to the police should be con-

sidered involuntary. Ladies and Gentlemen of the jury, I am sure you realize the irony of that. There's been no testimony that in any way this was involuntary for you have your own imagination to think of it to say yes, it isn't voluntary, because all the evidence in this case that you have heard from this witness stand was that he was warned as soon as he was arrested . . .' (N.T. 156).

(8) '. . . While the Commonwealth says this without a doubt is first degree murder, we are not seeking the death penalty in this case.' " (N.T. 159).

These remarks plainly violated our frequent admonitions against expression, by the prosecutor of a personal opinion as to the defendant's guilt or credibility, *see e. g.*, *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), as well as the prohibition against commenting on the defendant's right to remain silent and not testify at trial, *see e. g.*, *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973). Notwithstanding these transgressions, appellant's trial counsel sat mute, neither objecting and asking for cautionary instructions, nor requesting a mistrial.

Such remarks could not have failed to prejudice appellant in the eyes of the jury, and I would, therefore, reverse the judgment of sentence and order that appellant be awarded a new trial.

ROBERTS, J., joins in this dissenting opinion.