414 A.2d 998

**COMMONWEALTH of Pennsylvania,**

v.

**Harold D. NELSON, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted May 21, 1979.

Decided March 20, 1980.

492

Daniel M. Pell, York, for appellant.

Floyd P. Jones, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This is an appeal from an order entered in the Court of Common Pleas of York County, Criminal Division, denying appellant's petition for post-conviction relief.

Appellant, Harold D. Nelson, Jr., was convicted following a bench trial, of murder of the third degree for the killing of Heidi L. Myers, a five-month old infant. Post-verdict motions were filed and denied, and on December 20, 1976, judgment of sentence of six to fifteen years imprisonment was imposed. No direct appeal was taken.

On July 25, 1977, appellant filed a petition pursuant to the Post-Conviction Hearing Act,[1] in which he apparently advanced three grounds in support of his prayer for relief: that he had been denied his right to appeal; that he had been denied his right to testify in his own behalf; and that he was incompetent to stand trial. Counsel was appointed to represent appellant and directed by the court to file such "formal amendments" to the petition as he deemed advisable. None was filed.

On January 5, 1978, a hearing was held on appellant's petition for post-conviction relief. At the hearing, counsel for appellant informed the court that in light of the record he would not argue that issue raised in the petition which alleged appellant had been denied his right to testify in his own behalf. Moreover, counsel for appellant presented nei-

---

1. Act of January 25, 1966, P.L. (1965) 1580, § 1, 19 P.S. § 1180–1 et seq. (Supp. 1979–1980).

ther argument nor testimony in support of the two remaining issues advanced in the petition; indeed, their very existence was unacknowledged.

Notwithstanding counsel's failure to file an amended petition, counsel seized the opportunity presented by the post-conviction hearing to argue two new issues: that trial counsel had been ineffective for failing to move to suppress a confession given by appellant to a Pennsylvania State Police officer; and that "counsel was ineffective because he didn't intervene in the examination of [appellant] by Dr. Laucks [a psychiatrist who conducted an examination of appellant at the behest of the Commonwealth and testified as a prosecution witness at trial]." Testimony was taken and argument was entertained on these issues following which the court denied the petition. From the denial of appellant's petition for post-conviction relief this appeal was taken.[2]

Three arguments are urged upon us: that trial counsel was ineffective for failing to move to suppress appellant's confession to police; that trial counsel was ineffective for failing to move to suppress and/or object to statements made by appellant to a psychiatrist who examined appellant on behalf of the prosecution; and that trial counsel was ineffective in failing to request a hearing on appellant's competency to stand trial.

The Post Conviction Hearing Act (PCHA) requires, *inter alia*, that a petitioner demonstrate "[t]hat the error resulting in his conviction and sentence has not been finally litigated or waived." 19 P.S. § 1180–3(d). Our initial obligation, then, is to determine which among those issues raised at various times in the progress of the instant case have been properly preserved for our review.

 The three issues raised in appellant's *pro se* petition were abandoned, either expressly or by non-argument at the PCHA hearing. Generally issues, though raised in a PCHA petition, which are not pursued at the time of the hearing are waived. *Commonwealth v. Sullivan*, 472 Pa. 129, 371

2. This case was reassigned to the writer on December 14, 1979.

A.2d 468 (1977); *Commonwealth v. Bowen*, 455 Pa. 152, 314 A.2d 24 (1974). This general principle may not, however, apply where the issue is one asserting a lack of competency to stand trial. See discussion, *infra*.

The three issues advanced in appellant's brief in this court assail the effectiveness of the representation provided appellant by trial counsel. Issue one assigns as ineffectiveness trial counsel's failure to move to suppress appellant's confession to the police. Issue two asserts as ineffectiveness trial counsel's failure to "suppress [. . .] and/or object [. . .]" to the admission of inculpatory statements made by appellant to a psychiatrist. The alternative claim advanced in issue two, viz. trial counsel was ineffective for failure to move to suppress the statements made to the psychiatrist, has not been presented at any stage heretofore, and is, thus, waived. *Commonwealth v. Ligon*, 454 Pa. 455, 314 A.2d 227 (1973).

The two broader assignments of ineffectiveness were raised for the first time *at the hearing*. It is, of course, true that failure to have alleged ineffective assistance of counsel on a direct appeal, or, as instantly, failure to have taken a direct appeal at all, will not act as a waiver of the claim where the same attorney represented appellant at both the trial and post-trial stages. *Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199 (1978). It is also well settled that claims of ineffective assistance of counsel may be raised in a collateral attack. *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976).

Neither of the above principles, however, contravenes the basic proposition that "ineffectiveness of prior counsel must be raised as an issue *at the earliest stage* in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant." (Emphasis added.) *Commonwealth v. Hubbard*, 472 Pa. 259, 277 fn. 6, 372 A.2d 687, 695 fn. 6 (1977).

In *Commonwealth v. Mitchell*, 477 Pa. 274, 383 A.2d 930 (1978), relying upon Pa.R.Crim.P. 1506(4), we "refuse[d] to consider anything not raised in a counseled petition." *Id.*, 477

Pa. at 280–281, 383 A.2d at 933. In *Commonwealth v. Wilson*, 482 Pa. 350, 393 A.2d 1141 (1978), we noted that *"Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), and its progeny require a certain degree of specificity to preserve issues for appellate review, and . . . we believe such specificity must be met before the evidentiary hearing . . ." *Wilson, supra*, 482 Pa. 354, 393 A.2d at 1143.[3]

■ Although we acknowledge that the procedural history of the instant case is not identical with the procedural histories of either *Wilson, supra*, or *Mitchell, supra*, we do not believe that the principle enunciated in those cases is subordinate to their peculiar facts. In the instant case the *pro se* petition filed by appellant was forwarded by the court to counsel appointed to represent petitioner to provide "the opportunity to consult with counsel and to amend this petition to be sure that all grounds for relief have been stated." A petition was filed seeking a thirty-day extension of time within which to amend the PCHA petition. The petition was granted by the court. Nevertheless no amendments were made. We are constrained to conclude that the requirement of "specificity" which we stated in *Wilson, supra*, "must be met before the evidentiary hearing", was not met in the instant case the issues alleging ineffectiveness of trial counsel have not been properly preserved for our review.

We turn to the third issue presented to us in this appeal, and the third issue raised in appellant's *pro se* PCHA petition, although abandoned by counsel at the hearing: the issue of appellant's competency to stand trial.

We have long held that "the mental competence of an accused must be regarded as an absolute and basic condition of a fair trial." *Commonwealth v. Bruno*, 435 Pa. 200, 205

---

**3.** We recognize that neither *Mitchell* nor *Wilson* were procedurally on all fours with the instant case. In *Wilson*, the claim of ineffectiveness was raised generally in the PCHA petition, "no specific argument" was made on the claim at the hearing, and the specific instances of alleged ineffectiveness were advanced in a brief submitted subsequent to the hearing. In *Mitchell* the ineffectiveness claim was presented for the first time in a brief submitted after the PCHA hearing.

n.1, 255 A.2d 519, 522 n.1 (1969). Accordingly we have been loath to find a waiver of such a claim. *Commonwealth v. Marshall,* 456 Pa. 313, 318 A.2d 724 (1974). Indeed, we have recently held that "when the issue presented is whether a person was competent to stand trial, the waiver rule is not applicable." *Commonwealth v. Tyson,* 485 Pa. 344, 402 A.2d 995, 997 (1979).

■ It is, of course, true that *Tyson, id.,* and *Marshall, supra,* were direct appeals, and while *Bruno, supra,* was a collateral attack, it was not a PCHA petition. Nevertheless, our waiver doctrine, although judge-made and not statutory, is one we stringently apply. We have expressly discarded the "fundamental error" rule. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). Thus, while not recognizing fundamental error, we nevertheless will not permit the waiver of a claim of incompetency, so basic is it to our concepts of justice that a trial of an incompetent is no trial at all. Although we recognize the PCHA includes a waiver provision of its own, 19 P.S. § 1180–3(d) having held the competency of an accused to be an absolute and basic condition of a fair trial, we further hold the no-waiver rule in *Tyson* to be applicable here as well.

Instantly no competency hearing was held, nor was one requested. The issue as it had survived for us, then, is not whether appellant would have passed the two-pronged test for competency,[4] it is rather only whether his counsel was ineffective for failing to raise the claim that he would not.

Since counsel elected not to argue this issue at the PCHA hearing, we have no record before us relevant to the claim of incompetency. The two psychiatric evaluations which are of record are concerned with the question of insanity and legal culpability. These are not the same as competency to stand trial. There is, moreover, no evidence of record indicating what information relative to appellant's competency may have been available to counsel, or what considerations prompted counsel not to seek a hearing on the issue.

4. See, *Com. ex rel. Hilberry v. Maroney,* 424 Pa. 493, 227 A.2d 159 (1967).

Accordingly, the case is remanded for an evidentiary hearing to determine whether trial counsel had "any reasonable basis" for foregoing a claim of "arguable merit". *Commonwealth v. Hubbard, supra.* Following such hearing should the court determine trial counsel was ineffective for not requesting a competency hearing, it should order such a hearing. *Commonwealth v. Marshall,* 456 Pa. 313, 318 A.2d 724 (1974); *Commonwealth v. Davis,* 455 Pa. 596, 317 A.2d 211 (1974); *Com. ex rel. Hilberry v. Maroney,* 417 Pa., 534, 207 A.2d 794 (1965). If no ineffectiveness is found, the judgment of sentence is affirmed.

The record is remanded for proceedings consistent with this opinion.

ROBERTS, J., files a dissenting opinion.

FLAHERTY, J., files a dissenting opinion in which LARSEN, J., joins.

ROBERTS, Justice, dissenting.

I agree with the majority that this Court must remand the record for further proceedings on appellant's competency claim. But I disagree that appellant has waived his claim that trial counsel provided appellant constitutionally ineffective assistance. It is true that appellant did not raise his claim of ineffective assistance until the hearing on his petition for post-conviction relief. But the Commonwealth then took no objection to appellant's presentation of this claim, and does not now. Indeed, the PCHA court decided appellant's claim on the merits. There is no reason for this Court now sua sponte to raise what all interested parties have viewed as a non-prejudicial technical defect. See 4 Standard Pennsylvania Practice Ch. 17, § 13, pp. 494–95 (1955) ("[i]t is too late after a trial on the merits to raise the objection of variance, particularly after verdict and judgment").

Turning to the merits, I am of the view that trial counsel did not provide appellant constitutionally effective assistance. Although trial counsel knew that appellant is emo-

tionally unstable with poor tolerance to stress and weak impulse control, counsel failed to challenge the admissibility of an inculpatory statement which the police obtained. Instead, counsel stipulated at trial to the voluntariness of both the statement and appellant's waiver of rights under *Miranda*. Counsel thought it best to utilize appellant's weak impulse control only to defend against a charge of murder of the first degree.[1]

The dispositive question on this appeal is whether counsel acted reasonably in choosing not to challenge the admissibility of appellant's inculpatory statement. In view of appellant's weak impulse control, the answer to this question is clear. Appellant's weak impulse control renders the voluntariness of appellant's statement highly suspect. As this Court has observed,

"Due process prohibits the evidentiary use of a criminal defendant's incriminating statements unless it is first established that those statements were 'the product of a rational intellect and a free will.' *Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917 (1963), and *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745 (1963). The determination of whether or not such evidence meets these required standards depends on a consideration of the 'totality of the circumstances.' *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 360 (1966); *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274 (1960); *Lyons v. Oklahoma*, 322 U.S. 596, 64 S.Ct. 1208 (1944); and *Commonwealth ex rel. Gaito v. Maroney*, 422 Pa. 171, 220 A.2d 628 (1966). And

1. Pursuant to counsel's selected line of defense, counsel without objection permitted a Commonwealth psychiatrist to examine appellant outside counsel's presence. But had counsel utilized appellant's weak impulse control first as a basis for challenging the voluntariness of appellant's inculpatory statement or the voluntariness of appellant's waiver of rights under *Miranda*, and prevailed, surely he could not, by any standard of effective assistance, still submit appellant to unilateral Commonwealth psychiatric examination. The only other Commonwealth evidence was circumstantial and the Commonwealth does not now claim that this evidence links appellant to the killing. To submit appellant to Commonwealth psychiatric examination in these circumstances would not have served to promote appellant's best interests, but rather the Commonwealth's case.

the accused's physical and mental condition must be considered, for sickness or ill health may well influence his will to resist and make him prone to overbearing and improper questioning. *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541 (1961). For the inquiry as to the voluntariness of a defendant's incriminating statements cannot be narrowed to a consideration of whether or not the police resorted to physical abuse in procuring them; equally relevant on the issue of voluntariness is the determination of whether or not the accused's will was overborne at the time he made the statements. *Reck v. Pate*, supra."

*Commonwealth v. Holton*, 432 Pa. 11, 17, 247 A.2d 228, 231 (1968). Given this established test, there was no reasonable basis for counsel's failure to seek suppression of appellant's statement. Appellant's weak impulse control also casts the same degree of doubt on the voluntariness of appellant's waiver of rights under *Miranda*. See e. g., *Commonwealth v. O'Bryant*, 479 Pa. 534, 388 A.2d 1059 (1978); see generally *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019 (1938).

This Court should, therefore, remand to permit these issues to be fully litigated.

FLAHERTY, Justice, dissenting.

I dissent. It would appear that the majority is requiring counsel to raise the question of the accused's competence to stand trial *in every case*, for fear that he will be otherwise found "ineffective," even where there is no question that the accused is competent to stand trial.

The test of an accused's competence to stand trial is: "his ability to comprehend his position of one accused of murder and to cooperate with his counsel in making a rational defense. [S]tated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding and have a rational as well as a factual understanding of the proceedings against him."

*Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 495, 227 A.2d 159, 160 (1967).

A review of the record in this case reveals a wealth of psychiatric testimony which clearly establishes appellant's competency to stand trial. Although, as the majority correctly indicates, "the two psychiatric evaluations which are of record are concerned with the question of insanity and legal culpability" (Majority Opinion, *supra* at 7–8), there is sufficient relevant uncontradicted evidence to show that appellant was indeed competent. Appellant clearly was in touch with reality, had an understanding of the proceedings against him and was perfectly capable of participating in his defense.*

* The following excerpts from the record support a finding that appellant was competent to stand trial:

*Testimony of Dr. Laucks* (psychiatrist for the prosecution):

Q Would you tell the Court what you observed about the personality of Harold Nelson during the course of your examination?

A Harold was quite calm and cooperative throughout the examination. He didn't seem particularly anxious either about the examination or the situation in which he was currently caught up. At no point throughout the examination did he or I have any difficulty communicating. He did not display any evidence of gross mental symptoms that could be construed as psychotic. He described in considerable detail his behavior both in the current situation and prior to this. (N.T. at 60).

\* \* \* \* \* \*

Q During the conduct of your examination, how would you describe his ability to answer questions or respond to questions or his general verbal productivity?

A Normal.

Q Was he aware of the charge against him?

A He was.

Q Was he aware of the possible sentence he might receive?

A Yes.

Q Did the defendant during your interview express any delusions, any hallucinations, or express any grandiose trends?

A. No.

Q. What is his orientation for time and place and people?

A. Normal. (N.T. at 63).

Testimony of Dr. Pandelidis (defense psychiatrist):

Q. What conclusion did you arrive at with respect to defendant being oriented and so on?

A. He was oriented in all spheres.

Q. Was he able to cooperate with you in the conversation?

A. He was. (N.T. at 77–78).

502

Appellant's competence to stand trial was apparently never in question. This being the case, there was absolutely no reason for trial counsel to have ever raised the issue. In fact, had he done so, he would have been asserting a frivolous claim—something we should be discouraging. The majority, in remanding to determine whether trial counsel had any "reasonable basis" for failing to raise the competency claim is imposing an unnecessary burden on the court's already limited time and resources, for it is clear that there was never a question of appellant's competence. Accordingly, I dissent.

LARSEN, J., joins in this dissenting opinion.