549 A.2d 107

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Bobby Joe LAWSON, Appellee.**

Supreme Court of Pennsylvania.

Submitted March 7, 1988.

Decided Oct. 17, 1988.

Reargument Denied Dec. 29, 1988.*

§ 5704 of the Act, I note with approval his analysis of the issue and would incorporate his opinion into this one.

* Mr. Justice Larsen did not participate in the consideration or decision of this matter.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Pittsburgh, for appellant.

Erika P. Kreisman, Pittsburgh, for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

506

## OPINION

NIX, Chief Justice.

Before the Court for resolution is the Commonwealth's appeal from an order of the Superior Court, 362 Pa.Super. 625, 520 A.2d 65, affirming the hearing court's determination that, as a result of trial and appellate counsels' ineffectiveness, appellee's 1974 conviction for murder of the first degree must be vacated, the sentence of life imprisonment set aside, the appellee discharged from custody and further prosecution for this offense prohibited. This Court granted the Commonwealth's request for further review, and the parties chose to submit the matter on briefs without argument.

This appeal provides another opportunity for this Court to address the vexing problem of repetitive petitions that has arisen under our former Post Conviction Hearing Act (P.C. H.A.), 42 Pa.C.S. § 9541 *et seq.*,[1] and its impact upon the finality of judgments of sentence in criminal cases. For the reasons that follow, we are constrained to conclude that the relief granted below was in error and that the petition should have been summarily dismissed.

The record reflects that appellee was arrested on November 28, 1973. At that time Rule 1100 required that the trial commence within 270 days from the date on which the complaint was filed.[2] Thus, the 270th day from the date on which the complaint was filed was August 25, 1974. Appellee and a co-defendant, O'Neal Weathers El, were charged with killing one Kelvin Parker, in the latter's home as a

---

**1.** The Post Conviction Hearing Act has been modified in part, repealed in part, and renamed the Post Conviction Relief Act by Act of April 13, 1988, No. 47, §§ 3–4, 1988 Pa.Legis.Srv. 227, 229–232. The new provision applies to all actions for collateral relief instituted on or after the effective date. *Id.* at § 6(2). Therefore, the instant petition, having been filed under the P.C.H.A., must be evaluated under the former act.

**2.** Pa.R.Crim.P. 1100(a)(1) provides:
(a)(1) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973, but before July 1, 1974, shall commence no later than two hundred seventy (270) days from the date on which the complaint is filed.

result of a dispute relating to drugs. The two defendants were listed to be tried together. Appellee was represented by privately engaged counsel. A *pro se*, joint motion to sever was filed by the defendants, which was granted by Judge (now Justice) Flaherty. The trial of the co-defendant Weathers El concluded on June 3, 1974, and resulted in a conviction of murder in the first degree. The judgment of sentence in that case was affirmed *per curiam* by this Court on April 7, 1976. *Commonwealth v. O'Neal Weathers El*, 467 Pa. 13, 354 A.2d 250 (1976). A copy of a memorandum dated June 6, 1974, from the office of the District Attorney indicated defense counsel requested a postponement for appellee. The authenticity of that memorandum was verified by the Assistant who ultimately tried the case against appellee. Additionally the record contains an application for postponement dated September 4, 1974, and consented to by appellee's privately retained counsel. Trial in the case commenced on September 10, sixteen (16) days after the run date. The record reflects that during this period the responsibility of listing cases was handled by the office of the District Attorney[3] and that through an administrative error Lawson's case was not tried immediately after the trial of the co-defendant.

A recitation of the lengthy and convoluted procedural history leading to this point in the proceedings is necessary to properly frame the issues presently before us for resolution. After trial without a jury, appellee was convicted of first degree murder on September 10, 1974. Trial counsel filed boilerplate motions for a new trial which were denied.[4]

3. This Court has made it clear that the ultimate power and responsibility for scheduling cases for trial is in the trial court. *See Commonwealth v. Mayfield*, 469 Pa. 214, 218, 364 A.2d 1345, 1347 (1976); *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968). This does not mean that the practice in some counties whereby the calendaring of criminal cases is done by the district attorney is prohibited. It does, however, require the court to remain accountable for its calendar.

4. Motions containing mere boilerplate challenges do not preserve specific objections. *See Commonwealth v. Hennessey*, 485 Pa. 647, 403 A.2d 575 (1979); *Commonwealth v. Carrillo*, 483 Pa. 215, 395 A.2d 570

No direct appeal was taken. In September of 1976, appellee, with new counsel, first sought post-conviction relief alleging ineffectiveness of trial counsel. The trial court, after consideration of that motion, granted the request and gave leave to appellee to file post-trial motions *nunc pro tunc*.[5] On December 15, 1977, the court heard argument on the motions and dismissed the complaints.[6] Appeal was taken to this Court and dismissed by a Special Transfer Docket Panel on October 17, 1979.[7] *Commonwealth v.*

(1978); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975); Pa.R.Crim.P. 1123(a).

5. Appellee's *nunc pro tunc* post-trial motions were aptly summarized by appellant in its brief as follows:

1. The verdict of guilty of first degree murder is contrary to law and the weight of the evidence.

2. The Trial Judge erred in not considering that petitioner's addiction and need for drugs negated the specific intent necessary to constitute the robbery charge and also the charge of murder based on felony-murder.

3. The Trial Court erred in not considering the applicability of self-defense to the circumstances of the instant case.

4. The Trial Court erred in admitting evidence of certain admissions made by defendant after his arrest. Said statement had been obtained as a result of an illegal warrantless arrest.

5. The Trial Court erred in applying the felony murder rule to the facts of his case in that the felony murder rule does not apply to the instant factual situation.

6. After verdict the defendant was deprived of his constitutional right to be represented by counsel or alternatively received inadequate and ineffective representation of counsel.

a. Defendant's trial attorney filed Post–Trial Motions *Nunc Pro Tunc*, which were phrased in very general terms and inadequate for the complex issues in a felony murder case.

b. No appeal was filed either by trial counsel or by the public defender's office after defendant specifically instructed him to file an appeal.

6. The post-trial motions were filed, argued, and ruled on by the Honorable Robert E. Dauer due to trial judge Donald E. Zeigler's becoming a member of the bench of the United States District Court of the Western District of Pennsylvania.

7. This Court had original appellate jurisdiction over all homicide convictions until 1978, when the legislature limited the original appellate jurisdiction of this Court to cases in which the death penalty was imposed. *See* 42 Pa.C.S. § 9711(h). Original appellate jurisdiction over the remaining homicide convictions was transferred to the Superior Court. However, in order to dispose of the numerous homicide appeals filed in this Court before the effective date of the change, this

*Lawson,* 274 Pa.Super. 641, 423 A.2d 1311 (1979). A petition for allowance of appeal to this Court was denied. A petition for writ of certiorari to the United States Supreme Court was also denied. *Lawson v. Pennsylvania,* 447 U.S. 926, 100 S.Ct. 3021, 65 L.Ed.2d 1119 (1980). In February of 1981 appellee filed *pro se* his second application for post-conviction relief, alleging the ineffectiveness of trial and appellate counsel for failure to raise the alleged violation of Rule 1100. This petition was denied without a hearing. Following this denial, in May of 1981, petitioner filed another *pro se* application for post-conviction relief which was also denied. In March of 1982 appellee, with the assistance of counsel, filed yet another post-conviction petition, once again alleging trial and appellate counsel's ineffectiveness for failing to raise a Rule 1100 objection.

■ This appeal evidences the problems that can arise if we permit post-conviction relief to destroy any concept of finality in our decisional process in the area of criminal law. Although the Commonwealth in this very important case did not focus upon this serious concern,[8] we are satisfied that its importance to the integrity of our system of jurisprudence requires our attention, albeit gratuitously.

To attempt to resolve the claim for relief requested in this repetitive post-conviction petition by examining the legitimacy of the asserted Rule 1100 violation or to engage in an assessment as to whether the failure to raise that claim constitutes ineffectiveness of counsel, as did the P.C.H.A. court and the Superior Court in this case, ignores the waiver provisions under the former P.C.H.A., 42 Pa.C.S.

Court, in 1979, adopted the following interim procedure. All homicide appeals pending in the Supreme Court were transferred to the Superior Court. A three-judge panel, composed of one justice of the Supreme Court and one judge from each of the Superior and Common Pleas Courts, heard the appeal, with the defendant being afforded the prerogative to thereafter petition this Court for allowance of appeal. *See, e.g.,* In Re: Transfer of Appeals, No. 52, Supreme Court Rules Docket, No. 1 (1979). Appellee's appeal was heard by Justice Larsen, Senior Judge Van der Voort and Judge Lavelle.

8. The Commonwealth challenged the validity of the finding of ineffective assistance of counsel.

§§ 9543(4), 9544(b), and renders the "finally litigated" concept illusory whenever an assertion of ineffectiveness of counsel is raised. In this Court we have strictly adhered to the rule that an appellate court should consider on appeal only those issues that have been properly raised by the parties. *Commonwealth v. Isabell,* 503 Pa. 2, 467 A.2d 1287 (1983); *Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Wilson,* 482 Pa. 350, 393 A.2d 1141 (1978). We have condemned the *sua sponte* raising of issues by an appellate tribunal. *Commonwealth v. Capitolo,* 508 Pa. 372, 498 A.2d 806 (1985). In this instance the Commonwealth challenges the finding of ineffectiveness on the theory of our decision in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), suggesting that the record does not show prejudice.[9] Following our traditional rules, if we reach the argument as framed, we would be compelled to ignore the underlying issue raised in this appeal. The concern in this matter is the problem of repetitive petitions for collateral relief in criminal cases, not the legitimacy of the claim of the ineffectiveness of trial and appellate counsel.

Properly stated, the threshold issue is whether a proper reading of the waiver and "finally litigated" provisions of the former P.C.H.A. required that the instant petition should have been summarily dismissed without a hearing. Under the unique circumstances presented by this

9. An agreement to a submission of briefs in this matter by the Commonwealth is somewhat surprising. We note the mandate of Pa.R.A.P. 2311, which requires submission of all post-conviction hearing cases on briefs unless otherwise directed. Nevertheless, the importance of the issues presented should most certainly have prompted an application for argument by the Commonwealth.

The consequence of the rulings below would release a convicted murderer who was sentenced to life imprisonment. The conviction in question was reached by the tribunal and affirmed by the court of common pleas after disposition of post-trial motions. It was reviewed by a special panel of appellate judges and further review was denied by this Court as well as the United States Supreme Court. Any decision to second-guess such a judgment fourteen years later must, at the very least, be a circumspect judgment and supported by compelling circumstances.

appeal, we deem it appropriate to depart from our long-standing rules relating to when an issue is properly before an appellate tribunal and *sua sponte* address this threshold issue.

The problems posed by repetitive post-conviction petitions are not new to this Court. In a number of decisions we have attempted to satisfactorily resolve this vexing problem. *Commonwealth v. Alexander,* 495 Pa. 26, 432 A.2d 182 (1981); *Commonwealth v. McNeal,* 493 Pa. 395, 426 A.2d 606 (1981); *Commonwealth v. Watlington,* 491 Pa. 241, 420 A.2d 431 (1980). As Mr. Justice Flaherty expressed in a dissenting opinion in *Commonwealth v. Watlington, supra,* 491 Pa. at 252, 420 A.2d at 437, "a second post-conviction appeal should be the *exception,* not, as is presently the case, the *rule.*" (Emphasis in original.) The General Assembly in passing the P.C.H.A. expressed the clearest possible intention not to create a vehicle for continuing assaults upon a judgment of sentence. *See* 42 Pa.C.S. § 9544 (repealed).[10] The P.C.H.A. provided for denying further review when an issue is either finally litigated, 42 Pa.C.S. § 9544(a) (repealed), or the issue has been waived, 42 Pa.C.S. § 9544(b) (repealed). In addition, the

**10.** Former section 9544 provided:

(a) **Issues finally litigated.**—For the purpose of this subchapter, an issue is finally litigated if:

(1) It has been raised in the trial court, the trial court has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to appeal the trial court's ruling.

(2) The Superior Court has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to avail himself of further appeals.

(3) the Supreme Court has ruled on the merits of the issue.

(b) **Issues waived.**—For the purposes of this subchapter, an issue is waived if:

(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter.

(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

(c) **Presumption.**—There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

section also created a rebuttable presumption that a failure to appeal a ruling or to raise an issue was a "knowing and understanding failure." 42 Pa.C.S. § 9544(c) (repealed). This legislative intent to obtain finality in criminal matters is also reflected in the former § 9545(c) which provides:

> (c) **All available grounds to be set forth.**—Any person desiring to obtain relief under this subchapter shall set forth in the petition all of his then available grounds for such relief for any particular sentence he is currently serving and he shall be entitled to only one petition for each crime. The failure to raise any issue in the petition shall be deemed a waiver of any right to future presentation of another petition containing grounds for relief that were available and could have been presented.

42 Pa.C.S. § 9545(c) (repealed).

The alleged violation of Rule 1100 could have been raised in the first P.C.H.A. petition filed. It could have been raised in the post-trial motions that were subsequently filed. Regrettably, overly generous judicial decisions have in fact permitted the magic words "ineffective assistance of prior counsel", regardless of the number of prior counsel, to be equated with the concept of "extraordinary circumstances" set forth under § 9544(b)(2), thereby effectively denuding the presumption provided for under subsection (c) of the same section of any significant vitality.

In *Commonwealth v. Alexander, supra,* this Court attempted to come to grips with this problem. Mr. Justice Larsen writing the opinion announcing the judgment of this Court[11] observed:

> To the extent the courts, this one included, have permitted the utterance of the magic words, "ineffective assistance of counsel" to establish an automatic right to bring

---

11. The opinion of Mr. Justice Larsen did not command a majority of the six-man Court. This writer filed a concurring opinion. Mr. Justice Flaherty filed a concurring opinion in which Mr. Justice Kauffman joined. The then Chief Justice O'Brien and Mr. Justice Roberts concurred in the result. What is significant, although the lack of unanimity as to a solution of the problem was evident, is that the recognition of that problem was unanimously acknowledged.

multiple PCHA proceedings, "the system needs revision to prevent abuse by prisoners, a waste of the precious and limited resources available for the criminal process, and public disrespect for the judgments of criminal courts."

495 Pa. at 33, 432 A.2d at 185.

Today we have reached a consensus which proved so elusive in *Commonwealth v. Alexander, supra,* and *Commonwealth v. Watlington, supra.* This accommodation has been reached by the realization that we cannot permit our continuing concern for assuring that persons charged with crime receive competent representation in their defense to be exploited as a ploy to destroy the finality of judgments fairly reached. We therefore conclude that a second or any subsequent post-conviction request for relief will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred.

We are satisfied that, under our rules, we have provided ample safeguards to assure that a person convicted of a crime is provided ample opportunity to assert a legitimate complaint. In this case, after the initial grant of P.C.H.A. relief, the appellee raised a direct appeal which included review by the Special Transfer Docket Panel, by this Court on a Petition for Allowance of Appeal, and also by the United States Supreme Court by Writ of Certiorari. In addition, there were other petitions filed, albeit *pro se,* requesting further collateral review which were denied.

We hold today that the mere assertion of ineffective assistance of counsel is not sufficient to override the waiver and "finally litigated" provisions in the P.C.H.A., as to permit the filing of repetitive or serial petitions under the banner of that statute.[12] A repetitive or serial petition may

12. The new provisions enacted by the General Assembly in the Act of April 13, 1988, clearly reflect a legislative perception that courts had been too generous in entertaining claims for relief under the former statute. For example, under the new 42 Pa.C.S. § 9543(a)(2)(ii), a petitioner seeking relief on a claim of ineffective assistance of counsel must plead and prove that counsel's stewardship "so undermined the

514

be entertained only for the purpose of avoiding a demonstrated miscarriage of justice, which no civilized society can tolerate. With regard to the instant case, the petitioner does not attack the fairness of the trial that resulted in his conviction, nor does he even assert that he was innocent of the criminal charges involved. What he seeks to do is to negate his obligation to stand trial, and in that effort relies on a procedural technicality. There has been no showing of a miscarriage of justice that would warrant entertaining his repetitive application for collateral relief. This petition should have been dismissed by the court without a hearing.

Accordingly, the Order of the Superior Court affirming the hearing court is reversed; the Order of the hearing court is vacated, the petition is dismissed and the judgment of sentence is reinstated. Appellee is to be remanded to custody for completion of the sentence imposed.

LARSEN, J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., files a concurring opinion.

PAPADAKOS, Justice concurring.

I join the Majority Opinion because its use of the phrase "miscarriage of justice" is expressive of, and synonymous with, the standard of "prejudice" enunciated in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). A miscarriage of justice, like prejudice, can only occur where it is demonstrated that a particular omission or commission was so serious that it undermined the reliability of the outcome of the proceeding. Where a conviction can be shown to result from a breakdown in the adversary process, the conviction rendered is unreliable. Such a conviction is obviously prejudicial to the defendant and, if allowed to stand, is a miscarriage of justice.

truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

I write separately to emphasize that "prejudice" and "miscarriage of justice" are one in the same, lest the bar think that a new standard is being announced today.