**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David Allen SATTAZAHN, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 10, 2005.

Filed Feb. 18, 2005.

Brian Abbington, Philadelphia, and Gail M. Chiodo, Wernersville, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., and Mark C. Baldwin, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: STEVENS, LALLY–GREEN, and POPOVICH, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order entered by the Court of Common Pleas of Berks County denying Appellant's first petition brought pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. We find Appellant's PCRA petition to be untimely, and, therefore, we affirm.

¶ 2 On September 19, 1991, Appellant pleaded guilty to two counts of robbery[1] and two counts of conspiracy to commit robbery.[2] Prior to the entry of the guilty pleas, on May 10, 1991, Appellant was convicted on an unrelated matter of murder in the first degree,[3] murder in the second degree,[4] murder in the third degree,[5] and several other charges. As the jury deadlocked with respect to the imposition of the death penalty, the trial court imposed a sentence of life without the pos-

---

1. 18 Pa.C.S.A. § 3701(a)(1)(i)-(v).

2. 18 Pa.C.S.A. § 903(a)(1)(2).

3. 18 Pa.C.S.A. § 2502(a).

4. 18 Pa.C.S.A. § 2502(b).

5. 18 Pa.C.S.A. § 2502(c).

sibility of parole on February 14, 1992.[6] Appellant did not appeal from the judgment of sentence with respect to the 1991 guilty pleas but did file a timely appeal with respect to the murder convictions.

¶ 3 On July 30, 1993, this Court dismissed certain of the May 10, 1991 convictions and reversed and remanded for a new trial on the remaining convictions. *Commonwealth v. Sattazahn*, 428 Pa.Super. 413, 631 A.2d 597 (1993). Both Appellant and the Commonwealth filed petitions for allowance of appeal with the Supreme Court of Pennsylvania. On April 15, 1994, the Supreme Court of Pennsylvania granted the petitions. However, on December 30, 1994, the Supreme Court of Pennsylvania dismissed the appeal as improvidently granted. *Commonwealth v. Sattazahn*, 539 Pa. 270, 652 A.2d 293 (1994).

¶ 4 On March 9, 1995, the Commonwealth notified Appellant that it intended to seek the death penalty on the retrial of the murder charges and that it intended to use Appellant's significant history of felony convictions, including the September 1991 convictions, as specific aggravating circumstances. On March 13, 1995, Appellant filed a motion to prevent the Commonwealth from seeking the death penalty and from using the September 1991 convictions as an aggravating factor. On May 31, 1995, that motion was denied, and on June 26, 1995, Appellant appealed said denial. On April 18, 1996, this Court affirmed the order of the trial court, and on March 5, 1997, the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal. *Commonwealth v. Sattazahn*, 547 Pa. 742, 690 A.2d 1162 (1997). The Supreme Court of the United States denied certiorari in 1997. *Sattazahn v. Pennsyl-*

*vania*, 522 U.S. 895, 118 S.Ct. 237, 139 L.Ed.2d 168 (1997).

¶ 5 Following the retrial, Appellant was convicted of murder in the first degree and the jury sentenced him to death. Appellant's conviction was affirmed on appeal by the Supreme Court of Pennsylvania. *Commonwealth v. Sattazahn*, 563 Pa. 533, 763 A.2d 359 (2000). The United States Supreme Court granted certiorari, and, ultimately, affirmed the judgment of sentence. *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003).

¶ 6 On March 14, 2003, Appellant filed a petition pursuant to the PCRA challenging his September 1991 guilty pleas. Counsel was appointed and an amended petition was filed on November 14, 2003. On December 19, 2003, the Commonwealth filed a response and requested the petition be dismissed as untimely. On January 5, 2004, the trial court issued a notice of intent to dismiss the PCRA as untimely. Appellant filed a response to the notice of intent and, on January 27, 2004, the PCRA court dismissed the petition as untimely. This appeal followed. Appellant was ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), he filed a 1925(b) statement, and the PCRA court subsequently issued an opinion.

¶ 7 On appeal, Appellant both challenges the PCRA court's dismissal of the petition as untimely and raises several challenges regarding the underlying merits of the petition. However, the PCRA court never addressed the merits of the underlying petition because it found the petition to be untimely. Thus, the sole question properly before us is whether the trial court

---

**6.** On March 17, 1992, Appellant entered a guilty plea to murder in the third degree in an unrelated case in Schuylkill County. On April 1, 1992, Appellant entered a guilty plea to burglary in Lebanon County.

erred in finding that the PCRA petition was untimely.

■ ¶ 8 It is well-settled under *Commonwealth v. Hutchins,* 760 A.2d 50, 53 (Pa.Super.2000), that if a PCRA petition is untimely, a trial court has no jurisdiction to entertain the petition. Appellant filed his PCRA petition on March 14, 2003; thus, the 1995 amendments to the PCRA [7] govern this petition. *See Commonwealth v. Alcorn,* 703 A.2d 1054, 1056–57 (Pa.Super.1997). 42 Pa.C.S.A. § 9545(b) provides that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the judgment becoming final...." Appellant's judgment of sentence became final on March 14, 1992, upon expiration of the 30–day period Appellant had to file an appeal with this Court. Thus, a timely PCRA petition had to be filed by March 14, 1993. Appellant did not file his petition until March 14, 2003. Accordingly, the petition is untimely.[8]

¶ 9 Section 9545 provides exceptions to petitions that are filed in an untimely manner which may still be considered by the court where:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or law of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i),(ii),(iii). Further, any petition invoking the above exceptions must be filed within 60 days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(2). The Pennsylvania Supreme Court has repeatedly stated that it is the Appellant's burden to plead and prove that one of the above-enumerated exceptions applies. *Commonwealth v. Beasley,* 559 Pa. 604, 741 A.2d 1258 (1999).

¶ 10 In the instant matter, Appellant argues that the Commonwealth failed to disclose certain information regarding modifications of sentence received by Appellant's co-conspirator, Jeffrey Hammer, in a case in Lebanon County, and that the Commonwealth failed to disclose the existence of two modified plea agreements entered into with Mr. Hammer in return for his testimony against Appellant in the Berks County cases. Appellant appears to claim that these alleged violations of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), fall under both the governmental interference exception and the newly discovered evidence exceptions.

7. Act of November 17, 1995, P.L. 1118 No. 32 (Spec.Sess. No. 1), § 1. The effective date of the act was 60 days after November 17, 1995, or January 16, 1996.

8. The 1995 amendments to the PCRA provided that a first-time PCRA petitioner whose judgment of sentence became final on direct appeal on or before the effective date of the amendments could file a first PCRA petition within one year of the effective date of the amendments (January 16, 1996). *See* Section 3(1) of the Act of Nov. 17, 1995 (Spec.Sess. No. 1) P.L. 1118, No. 32. While this "Grandfather Clause" would have applied in the case at bar, Appellant failed to file his petition within the relevant time period.

¶ 11 It is well-settled that a *Brady* violation can fall within the governmental interference exception. *Commonwealth v. Breakiron*, 566 Pa. 323, 330–31, 781 A.2d 94, 98 (2001). However, as noted above, Appellant only has sixty days after the discovery of the information to file his PCRA and he must plead and prove that the information could not have been discovered earlier with the exercise of due diligence. *Id.* Further, in order to prevail under the newly discovered evidence exception, Appellant must plead and prove that the facts upon which the claim is predicated were unknown to him and could not have been ascertained earlier by the exercise of due diligence. *Commonwealth v. Bronshtein*, 561 Pa. 611, 752 A.2d 868 (2000). In addition Appellant must show that these new facts constitute "exculpatory evidence" that "would have changed the outcome of the trial if it had been introduced." *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581 (1999).

¶ 12 With respect to the Lebanon County sentences, the record reflects that Mr. Hammer, Appellant's co-defendant on all the various cases in Lebanon, Berks, and Schuylkill Counties, pleaded guilty to certain charges on February 28, 1990. On March 18, 1992, Mr. Hammer was sentenced to an aggregate sentence of 15 to 45 years. On March 24, 1992, Mr. Hammer moved to modify his sentence. That motion was granted on April 1, 1992. The Commonwealth was then permitted to withdraw its plea agreement by Order of July 1, 1992. On January 20, 1993, Mr. Hammer was sentenced, as a result of the guilty plea to an aggregate sentence of 16 to 40 years. On February 1, 1993, Mr. Hammer again moved for modification and reconsideration of his sentence. On February 10, 1993, Mr. Hammer was resentenced to an aggregate sentence of twelve to thirty-two years.

¶ 13 Initially we note, and Appellant concedes, that all of the changes with respect to the Lebanon County sentence occurred *after* Appellant had entered into and been sentenced in the instant matter. Further, all of the information relating to Mr. Hammer's various maneuvers with respect to the Lebanon County proceedings was a matter of public record and not in the exclusive possession of respondent, who appears to have not been involved with the Lebanon County proceedings. It is well-settled that there is no *Brady* violation where the parties had equal access to information or if the Appellant knew of or could have uncovered the evidence with reasonable diligence. *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). Thus, we find that Appellant has failed to prove governmental interference with respect to the Lebanon County information.

¶ 14 We also find that this claim does not fall under the newly discovered evidence exception. The proceedings in question took place in 1992–93. Appellant, who was represented by counsel on his various criminal cases from approximately 1990 through the present, has failed to plead exactly when he discovered this information and why it could not have been discovered earlier through the exercise of due diligence.

¶ 15 With respect to the Berks County plea agreement, in February 1990, Mr. Hammer entered into a plea agreement with respondent, wherein he received a reduced sentence in exchange for his testimony against Appellant. Appellant acknowledges that he was aware of the plea agreement at the time of his guilty plea and in fact, cross-examined Mr. Hammer about the plea agreement during his May 1991 murder trial, but that respondent failed to disclose two subsequent modifica-

tions to the plea agreement.[9]

¶ 16 We have examined the record carefully, and we are in full agreement with the trial court's conclusion that Appellant has failed to show that the allegedly withheld information was material to his case or would have changed the results. The modifications to the plea agreement reduced the number of charges to which Mr. Hammer pleaded guilty, but did not change his sentence. At the time Appellant entered into his guilty plea he knew that Mr. Hammer had agreed to testify against him and that Mr. Hammer was receiving a reduced sentence in exchange for his testimony, and Appellant knew the length of Mr. Hammer's sentence. Appellant has utterly failed to demonstrate that a modification in the number of charges Mr. Hammer pleaded to in any way materially affected Appellant's decision to plead guilty.

■ ¶ 17 In any event, even if we were to conclude that there was a *Brady* violation, Appellant's claim would still fail, as Appellant failed to show that he complied with the timeliness requirements of 42 Pa. C.S.A. § 9545(2). Appellant has failed to set forth any information as to when and how he discovered the *Brady* material that the Commonwealth allegedly withheld from him. He fails to offer any explanation as to why this information, with the exercise of due diligence, could not have been obtained earlier. *See Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581 (1999) (60 day requirement of section 9545(b)(2) not satisfied where defendant fails to explain why information in statements at issue could not, with the exercise of due diligence, been obtained earlier); *Commonwealth v. Vega*, 754 A.2d 714, 718 (Pa.Super.2000) (60 day requirement of section 9545(b)(2) not met when defendant

failed to provide date on which he learned of evidence giving rise to after-discovered evidence claim).

■ ¶ 18 Appellant next claims that his September 1991 guilty pleas were not knowing and voluntary because he was unaware that they could be used as an aggravating factor in his capital proceeding and that counsel was ineffective for failing to advise him that the pleas could be used as an aggravating factor. Appellant argues that these claims fall under the newly discovered evidence exception to the PCRA and are therefore timely because his PCRA was filed within 60 days of the United States Supreme Court's decision affirming his death sentence. We disagree.

¶ 19 It is undisputed that Appellant became aware of the fact that the Commonwealth intended to use his guilty pleas as an aggravating factor on March 9, 1995, when the Commonwealth filed its notice of intent to seek the death penalty. Further, Appellant filed an interlocutory appeal of the trial court's decision allowing the use of the guilty pleas as an aggravating factor. This Court affirmed the decision in 1996, and both the Pennsylvania and United States Supreme Courts declined to hear his appeal in 1997. Thus, Appellant knew in 1997 that the Commonwealth was actually going to use the guilty pleas as an aggravating factor in his retrial in 1997. Additionally, Appellant raised this issue in his direct appeal to the Pennsylvania Supreme Court, who affirmed the judgment of sentence in 2000. Lastly, while Appellant argues that the triggering date should be the United States Supreme Court's 2003 decision affirming the judgment of sentence, we note that this issue was *not* argued in Appellant's brief to the United

---

**9.** We note that, while respondent claims that there were two modifications of the plea agreement, only one modified plea agreement is included in the certified record.

States Supreme Court, *see* 2002 WL 1275103 (June 3, 2002), and that the sole issues decided by the United States Supreme Court concerned whether the Commonwealth's decision to seek the death penalty at the retrial violated the double jeopardy and due process provisions of the United States Constitution.

¶ 20 We have carefully scrutinized Appellant's brief (which does not acknowledge that the aggravating factors issue was not before the United States Supreme Court) and we simply see no basis for his position that the facts upon which both this and his ineffective assistance of counsel claims are predicated were unknown to him until the 2003 United States Supreme Court decision. Based upon the above, it is clear that Appellant became aware of the Commonwealth's intent to use the guilty pleas as an aggravating factor· in 1995.

¶ 21 While Appellant argues that a PCRA challenging his guilty pleas, and counsel's effectiveness, would have been premature at that juncture, he points to nothing in support of this theory. Further, *arguendo,* even if we were to decide that the claims were not ripe until the legality of the use of the aggravating factors had been confirmed, that took place on November 20, 2000, when the Pennsylvania Supreme Court specifically held that the Commonwealth could use the guilty pleas as an aggravating factor. Thus, solely assuming for purposes of this writing that the November 20, 2000 date triggered the § 9545(b)(1)(ii) exception, Appellant had sixty days from that date, or until January 19, 2001, to file his petition. As he did not file his petition until March 2003, we find that his claims are untimely.

¶ 22 Appellant last argues that even if we find the petition to be time-barred, the constitutional violations which occurred constitute a fundamental miscarriage of justice. In support of this claim, Appellant cites to the Pennsylvania Supreme Court's decision in *Commonwealth v. Morales,* 549 Pa. 400, 408, 701 A.2d 516, 520 (1997) and *Commonwealth v. Lawson,* 519 Pa. 504, 513, 549 A.2d 107, 112 (1988). However, we find this reliance to be misplaced. Both *Morales* and *Lawson* address the issue of the miscarriage of justice exception in the context of waiver, either because an issue was previously litigated or because it was being raised for the first time, in a second or successive PCRA petitions. *Id.* Neither case even discusses, let alone holds, that an untimely first PCRA petition can be decided on the merits if Appellant pleads and proves a fundamental miscarriage of justice.[10] We see no legitimate basis for the extension of the *Morales* and *Lawson* doctrines in this instance. Appellant's petition is untimely.

¶ 23 For all the foregoing reasons, we affirm.

¶ 24 Affirmed.

¶ 25 LALLY–GREEN, J., concurs in the result.

---

10. We note that we have not held that Appellant in the instant matter has pleaded and proved that such a. fundamental miscarriage of justice has occurred.