J-S35038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH DURKIN, | |
| Appellant | No. 326 EDA 2015 |

Appeal from the PCRA Order January 7, 2015
in the Court of Common Pleas of Bucks County
Criminal Division at No.: CP-09-CR-0007257-2007

BEFORE: MUNDY, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JULY 08, 2015**

Appellant, Joseph Durkin, appeals from the order of January 7, 2015, dismissing, without a hearing, his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Because the petition is untimely without applicable exception, we affirm.

In an earlier appeal, the trial court summarized the factual and initial procedural history of this case as follows:

> Appellant was one of thirty-four co-defendants who were arrested and charged in connection with what we will term the James Beal corrupt organization—an extensive drug trafficking network that operated in Bucks and surrounding counties. The police investigation into this corrupt organization began with physical surveillance by law enforcement and the use of confidential informants in February[] 2007. With the help of

---

[*] Retired Senior Judge assigned to the Superior Court.

these confidential informants, the Commonwealth was able to conduct 16 controlled buys under police surveillance, some of which included controlled buys between undercover officers and James Beal. Confidential informants also allowed law enforcement to conduct consensual wiretaps on their conversations with James Beal.

In March 2007, upon applications by the Bucks County District Attorney's Office, two orders from the Bucks County Court of Common Pleas were issued to allow the installation of a GPS mobile tracking unit and a live GPS tracking device on one of James Beal's vehicles. The GPS unit on Beal's vehicle was operational for 26 days, wherein law enforcement was able to determine that Beal followed a "regular route" on most of these days, starting in the Bristol/Bensalem area of Bucks County. During the course of travelling [sic] on this route, Beal would make the majority of his stops in various retail and commercial parking lots, making a total of 406 stops over a 21-day period.

On May 24, 2007, the Commonwealth submitted an affidavit in support of an application for the interception of wire and electronic communications on two of James Beal's cellular telephones to . . . the Superior Court of Pennsylvania. The Superior Court issued an order authorizing interception of communications on the two Beal cellular telephones on May 24, 2007. Police immediately began intercepting telephone calls on Beal's telephones. As a result of the wiretap that was placed on James Beal's two cellular telephones, the police were able to record countless telephone calls between Beal and the thirty-four co-defendants involved in the corrupt organization, including Appellant . . . .

The contents of these recorded telephone conversations demonstrate that James Beal, the leader of the corrupt organization, was in the business of buying and selling various controlled substances, including cocaine; powder and crystal methamphetamine; ecstasy, marijuana, and steroids. Beal, Appellant, and the other members of the corrupt organization spoke of these controlled substances by using code words and other vague references to mask the true nature of the type of drug and amount of drugs in which they were dealing. . . .

. . . Appellant had forty-seven telephone conversations with Beal between May 24 and June 14, 2007, the majority of which

revolved around the acquisition and distribution of controlled substances. Within these conversations, Appellant and Beal used many of the code words to discuss Appellant's acquisition of crystal methamphetamine from James Burden, Jr., Appellant's drug supplier who held a residence in Texas. Appellant and Beal would contact each other to discuss when mailed packages from Burden would arrive from Texas to Appellant, and when Beal could then pick up his share of these packages from Appellant. . . .

On June 14, 2007, James Burden Jr. was arrested at [the] Philadelphia International Airport[.] Burden Jr. admitted to possessing controlled substances, and was found to have, among other controlled substances, seven ounces of crystal methamphetamine strapped to his body at the time of arrest.

Also on June 14, 2007, the Philadelphia Court of Common Pleas approved a search warrant for Appellant's residence at 218 Lockart Street, Philadelphia, Pennsylvania. Law enforcement executed the search warrant at Appellant's residence and found, among other items, eighteen large pots of marijuana plants; grow lights; assorted marijuana growing equipment and paraphernalia; numerous glassine bags; and an electronic scale. While law enforcement was conducting the search, a UPS package arrived at Appellant's residence. The package was opened pursuant to a search warrant[,] which was obtained from the Philadelphia Municipal Court, and was found to contain 7.2 ounces of crystal methamphetamine.

On July 17, 2007, the Commonwealth submitted a 271[-]page affidavit of probable cause to the District Court, which issued warrants for the arrest of Appellant and his co-defendants. On July 18, 2007, Appellant was arrested and taken into custody.

(Trial Court Opinion, 9/16/08, at 3-7) (record citations omitted).

On March 27, 2008, following a bench trial, the trial court found

Appellant guilty of corrupt organizations, criminal use of a communication

facility, three counts of possession with intent to deliver (PWID), and two counts of attempted PWID.[1] That same day, the trial court sentenced Appellant to an aggregate term of incarceration of not less than fifteen nor more than forty years, and a fine of $150,000.

On March 30, 2009, we affirmed the judgment of sentence, holding that the trial court had properly denied Appellant's motion to suppress and that it did not err in admitting the testimony of a Commonwealth expert witness. (**See Commonwealth v. Durkin**, 974 A.2d 1180 (No. 1301 EDA 2008, unpublished memorandum at *9 (Pa. Super. filed March 30, 2009))). On February 5, 2010, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. (**See Commonwealth v. Durkin**, 989 A.2d 7 (Pa. 2010)).

On July 6, 2010, Appellant, acting *pro se*, filed a timely PCRA petition. On July 19, 2012, following several changes of counsel, attempts by Appellant to represent himself, and the filing of multiple amended PCRA petitions, the PCRA court held an evidentiary hearing, at which Appellant was represented by counsel. At the conclusion of the hearing, the PCRA court directed the parties to file briefs in support of their respective positions, and Appellant again requested leave to proceed *pro se*. On

---

[1] 18 Pa.C.S.A. §§ 911, 7512, 35 P.S. § 780-113(a)(30), and 18 Pa.C.S.A. § 901, respectively.

December 21, 2012, the PCRA court held a *Grazier*[2] hearing and granted Appellant permission to proceed *pro se*.  On April 3, 2013, the PCRA court denied Appellant's first PCRA petition.

On March 10, 2014, this Court affirmed the denial of Appellant's first PCRA petition, holding, in part, that trial/appellate counsel was not ineffective for failing to raise the issue of whether the Court of Common Pleas of Buck County had subject matter jurisdiction over the charges and that Appellant's sentence was legal.  (*See Commonwealth v. Durkin*, 100 A.3d 302 (No. 1527 EDA 2013, unpublished memorandum at **10-13, 18-20 (Pa. Super. filed March 10, 2014))).  Appellant did not seek leave to appeal to the Pennsylvania Supreme Court.

On June 5, 2014, Appellant, acting *pro se*, filed the instant PCRA petition.  On November 7, 2014, Appellant, through counsel, filed an amended PCRA petition.  On December 12, 2014, the PCRA court issued notice of its intent to dismiss the petition pursuant to Pennsylvania Rule of Criminal Procedure 907.  On January 7, 2015, the PCRA court dismissed the petition as untimely.  The instant, timely appeal followed.  On February 3, 2015, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal.  *See* Pa.R.A.P. 1925(b).  On February 12, 2015,

---

[2] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

Appellant filed his Rule 1925(b) statement; on March 12, 2015, the PCRA

court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

> I. Did the P.C.R.A. [c]ourt violate Appellant's rights under the Sixth and Fourteenth Amendments by finding that the petition was untimely filed and that Appellant failed to raise, allege and plead any valid statutory exception to the time bar?
>
> II. Did the P.C.R.A. [c]ourt violate Appellant's rights under the Sixth and Fourteenth Amendments by finding that Appellant did not use due/reasonable diligence in filing the instant *pro se* P.C.R.A. petition and/or that it was not timely filed within 60 days of his learning the newly discovered evidence'[s] existence and import?
>
> III. Did the P.C.R.A. [c]ourt violate Appellant's rights under the Sixth and Fourteenth Amendments by finding that the claim was previously litigated?
>
> IV. Did the P.C.R.A. [c]ourt violate Appellant's rights under the Sixth and Fourteenth Amendments by finding that Appellant['s] claim was waived[?]
>
> V. Did the P.C.R.A. [c]ourt violate Appellant's rights under the Sixth and Fourteenth Amendments by finding that Appellant's new evidence claim was without merit and Appellant was not entitled to relief[?]

(Appellant's Brief, at 4).[3]

_____

[3] While Appellant claims that the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution in his Statement of the Questions Involved, he abandons that argument in the
*(Footnote Continued Next Page)*

Appellant appeals from the denial of his PCRA petition. To be eligible for relief pursuant to the PCRA, Appellant must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. **See** 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). Our standard of review for an order denying PCRA relief is well settled:

> This Court's standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.

**Commonwealth v. Carter**, 21 A.3d 680, 682 (Pa. Super. 2011) (citations and quotation marks omitted). However, "if a PCRA [p]etition is untimely, a trial court has no jurisdiction to entertain the petition." **Commonwealth v. Hutchins**, 760 A.2d 50, 53 (Pa. Super. 2000) (citations omitted).

---
*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

body of the brief. (**See** Appellant's Brief, at 4, 9-24). Therefore, we find Appellant's constitutional claims waived. **See Commonwealth v. Jones**, 815 A.2d 598, 604 n.3 (Pa. 2002) (claims raised in the Statement of Questions Involved but not pursued in the body of the brief are waived).

In the instant matter, Appellant filed his PCRA petition on June 5, 2014. The PCRA provides that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). A judgment becomes final for PCRA purposes "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

Here, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on February 5, 2010. Therefore, Appellant's judgment of sentence became final on May 6, 2010, ninety days after the Pennsylvania Supreme Court denied leave to appeal and Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court. **See** U.S.Sup.Ct.R. 13. Therefore, Appellant had one year, until May 6, 2011, to file a timely PCRA petition. Because Appellant did not file his petition until June 5, 2014, the petition is facially untimely. Thus, to obtain PCRA relief, he must plead and prove that his claim falls under one of the statutory exceptions to the one-year time bar provided at section 9545(b). **See** 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

Section 9545 provides that the court can still consider an untimely petition where the petitioner successfully pleads and proves that:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of

- 8 -

the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.*

Further, a petitioner who wishes to invoke any of the above exceptions must file the petition "within 60 days of the date the claim could have been presented." *Id.* at § 9545(b)(2). The Pennsylvania Supreme Court has repeatedly stated that it is an appellant's burden to plead and prove that one of the above-enumerated exceptions applies. *See, e.g.*, *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008), *cert. denied*, 555 U.S. 916 (2008).

Here, Appellant contends that he qualifies under the newly discovered facts exception. (*See* Appellant's Brief, at 9-16). However, Appellant's claim is less than coherent. (*See id.*). To the extent that Appellant's claim can be determined, he appears to aver that his new evidence consists of this Court's prior opinion affirming the denial of his first PCRA petition (PCRA Decision). (*See id.* at 10). Appellant states that this decision "set[s] forth new facts which establish for the very first time that his current sentence is illegal." (*Id.* at 9) (internal quotation marks omitted).

- 9 -

In his appeal from the denial of his first PCRA petition, Appellant argued that his sentence was illegal because his three PWID convictions should have merged for purposes of sentencing. (*See Durkin*, *supra* 1527 EDA 2013, at 18). We disagreed, holding that "[e]ach of [Appellant's] PWID convictions were based upon his possession of three different controlled substances located in different locations. Thus, the PWID offenses are not predicated upon a single criminal act for merger purposes." (*Id.* at 20) (citation omitted). Appellant now argues that by holding that the three possessory offenses were independent and not part of one single criminal episode, this Court created a new fact. (*See* Appellant's Brief, at 15). Appellant claims this new fact proves that the Court of Common Pleas of Bucks County did not have jurisdiction over the charges against Appellant, as they stemmed from drug seizures in Philadelphia County, and, therefore, his sentence is illegal. (*See id.* at 11-16). We disagree.

It is well-settled that a new judicial opinion does not constitute a newly discovered fact for purposes of 42 Pa.C.S.A. § 9545(b)(1)(ii). *See Commonwealth v. Watts*, 23 A.3d 980, 987 (Pa. 2011). In fact, "[o]ur Courts have expressly rejected the notion that judicial decisions can be considered newly-discovered facts which would invoke the protections afforded by section 9545(b)(1)(ii)." *Commonwealth v. Cintora*, 69 A.3d 759, 763 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (case citations omitted). In *Watts*, our Supreme Court stated:

Law is a principle; fact is an event. Law is conceived; fact is actual. Law is a rule of duty; fact is that which has been according to or in contravention of the rule. Put another way, A 'fact,' as distinguished from the 'law,' . . . [is that which] is to be presumed or proved to be or not to be for the purpose of applying or refusing to apply a rule of law. Consistent with these definitions, an in-court ruling or published judicial opinion is law, for it is simply the embodiment of abstract principles applied to actual events. The events that prompted the analysis, which must be established by presumption or evidence, are regarded as fact.

**Watts**, **supra** at 986-87 (some internal quotation marks and citations omitted).

Appellant disregards this body of law and instead relies upon an unpublished memorandum decision of this Court, **Commonwealth v. William Barrett**, No. 540 EDA 2012 (Pa. Super. filed, May 5, 2013), for the proposition that "a new factual determination can be found in the body of decisional law." (Appellant's Brief, at 11). However, "an unpublished memorandum of this Court carries no precedential weight, apart from the parties involved in that particular case." **Midwest Financial Acceptance Corp. v. Lopez**, 78 A.3d 614, 627 n.2 (Pa. Super. 2013) (citation omitted). Thus, Appellant has not provided any appropriate legal support for his contention that a prior case can constitute a newly discovered fact.[4] The

_____

[4] In any event, **Barrett** is inapposite. In **Barrett**, the appellant discovered via decisions in the cases of his co-defendants that a key prosecution witness had recanted. **See Barrett**, **supra** at 3. Thus, the newly discovered fact in **Barrett** was not the decisions in the cases of his co-defendants, but the recantation of the witness; the prior cases merely
*(Footnote Continued Next Page)*

decisions in **Watts** and **Cintora** are binding precedent, and Appellant has failed to show that he falls under the exception enunciated at 42 Pa.C.S.A. § 9545(b)(1). **See Watts**, **supra** at 987; **Cintora**, **supra** at 763.

Moreover, even if we were to hold that our PCRA Decision constituted a newly discovered fact, Appellant's claim would fail because he did not file the instant PCRA petition "within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Although we issued the PCRA Decision on March 10, 2014, Appellant, apparently relying upon the prisoner mailbox rule,[5] claims that he did not receive the decision until March 18, 2014, and thus that the sixty days should be counted, at the earliest,[6] from that date. (**See** Appellant's Brief, at 17-18).

Firstly, Appellant has not cited to any legal authority to support his contention that for purposes of 42 Pa.C.S.A. § 9545(b)(2), the prisoner mailbox rule deems "the date the claim could have been presented" as sixty days from the date the prisoner received a copy of the decision rather than

_(Footnote Continued)_ _____

served as the vehicle through which Barrett discovered the fact. **See id.** at 5-8.

[5] "[T]he prisoner mailbox rule provides that a _pro se_ prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing." **Commonwealth v. Chambers**, 35 A.3d 34, 38 (Pa. Super. 2011), _appeal denied_, 46 A.3d 715 (Pa. 2012) (citation omitted); **see** Pa.R.A.P. 121.

[6] Appellant attempts to argue, without citation to relevant legal authority that the sixty-day date should be counted from point the he "gain[ed] an understanding . . . [of] the significance" of the decision. (**See** Appellant's Brief, at 18-19).

the date it became available.  42 Pa.C.S.A. § 9545(b)(2); (**see** Appellant's Brief, at 17-19).  In any event, even if we were to use the date of March 18, 2014, Appellant still filed his petition beyond the sixty-day date.  Appellant signed his PCRA petition on June 2, 2014, seventy-six days after he received the PCRA Decision.  (**See** PCRA petition, 6/05/14, at 58).  Thus, his PCRA petition was not timely under the sixty-day rule.  **See** 42 Pa.C.S.A. § 9545(b)(2).

Further, Appellant appears to contend that his petition should be considered timely because he challenges the legality of his sentence and such a challenge can never be waived.  (**See** Appellant's Brief, at 20-21).  However, in **Commonwealth v. Fahy**, 737 A.2d 214 (Pa. 1999), the Pennsylvania Supreme Court rejected a similar contention.  The **Fahy** Court stated, "[a]lthough legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto."  **Fahy**, **supra** at 223 (citation omitted).  Thus, Appellant cannot evade the PCRA timeliness requirements based on a claim on an illegal sentence.  **See id.**

Appellant also appears to claim that his conviction constitutes a fundamental miscarriage of justice.  (**See** Appellant's Brief, at 21-24).  This Court has held that equitable claims such as a fundamental miscarriage of justice do not afford relief from the PCRA's jurisdictional time-bar.  **See Commonwealth v. Sattazahn**, 869 A.2d 529, 536 (Pa. Super. 2005)

- 13 -

(there is no legal support for claim that untimely PCRA petition can be decided on merits if petitioner claims fundamental miscarriage of justice). Therefore, there is no legal support for Appellant's claim that he can avoid the time limit of the PCRA by claiming a fundamental miscarriage of justice.

Thus, because the record demonstrates that Appellant's PCRA petition is untimely with none of the statutory exceptions to the time bar proven, we affirm the order of the trial court dismissing Appellant's second PCRA petition.[7]

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015

_____

[7] Because we hold that Appellant's PCRA petition is untimely, we need not address his contention that the trial court erred in finding that his claims were previously litigated. (*See* Appellant's Brief, at 19-20).