J-S09043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEITA BRISBON, | |
| Appellant | No. 1387 EDA 2016 |

Appeal from the PCRA Order April 15, 2016
in the Court of Common Pleas of Chester County
Criminal Division at Nos.: CP-15-CR-0000017-1997
CP-15-CR-0003141-2001

BEFORE:  SHOGAN, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED MARCH 29, 2017**

Appellant, Keita Brisbon, appeals *pro se* from the denial of his second petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, as untimely.  We affirm.

The PCRA court aptly provided the following pertinent procedural and factual history in its July 12, 2016 opinion:

> On November 10, 1996, in Coatesville, Pennsylvania, Ironne Cannon was shot in the street and critically injured.  On May 18, 1998, Appellant pled guilty to attempted homicide and conspiracy in the shooting of Mr. Cannon.  During his guilty plea hearing, Appellant admitted to being present, and involved, when Joseph Taylor shot Mr. Cannon as an act of revenge for an earlier beating.  On April 16, 2001, Mr. Cannon died from his

---

[*] Retired Senior Judge assigned to the Superior Court.

injuries. Appellant was subsequently charged with murder, convicted, and sentenced to life in prison on November 20, 2003. On May 12, 2005, the Pennsylvania Superior Court affirmed Appellant's judgment of sentence for first degree murder. (**See Commonwealth v. Brisbon**, 880 A.2d 3 (Pa. Super. 2005)). On October 13, 2005, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. (**See Commonwealth v. Brisbon**, 887 A.2d 231 (Pa. 2005)). On February 27, 2006, the United States Supreme Court denied his petition for writ of *certiorari*. (**See Brisbon v. Pennsylvania**, 546 U.S. 1219 (2006)).

On February 17, 2006, Appellant filed his first petition under the [PCRA]. One claim Appellant raised was that his counsel was ineffective for failing to obtain results from a gunshot residue test performed on his hands shortly after the shooting. [The PCRA court] found this claim without merit in that Appellant had been found guilty of being either the principal or an accomplice in the murder of Mr. Cannon, and whether or not he actually fired a shot on the night of November 10, 1996 was immaterial to his finding of guilt. Accordingly, [the PCRA court] dismissed his petition on July 25, 2006. The Superior Court affirmed that order on October 15, 2007. (**See Commonwealth v. Brisbon**, 943 A.2d 309 (Pa. Super. 2007)).

On September 3, 2015, Appellant filed the instant petition. [The PCRA court] reviewed the petition, found that it was untimely, and on February 18, 2016, provided to Appellant the mandatory twenty-day notice of [its] intent to dismiss his petition. **See** Pa.R.Crim.P. 907(1). [Appellant responded *pro se* on March 25, 2016.] On April 15, 2016, [the court] dismissed his second PCRA petition. [Appellant timely appealed.[1]]

(PCRA Court Opinion, 7/12/16, at 1-2) (citations provided).

Appellant raises three questions for our review:

_____

[1] Pursuant to the court's order, Appellant filed a statement of errors complained of on appeal on May 19, 2016. The PCRA court filed an opinion on July 12, 2016. **See** Pa.R.A.P. 1925.

I.      Whether the withholding of exculpatory Atomic Absorption test kit results caused a violation of **Brady**[2] Rule?

II.     Whether the availability now of exculpatory evidence that was thought not to exist constitutes newly discovered evidence meets [sic] 42 Pa.C.S.A. § 9545(b)(1)(i-iii), (2)?

III.    Whether [the] prosecutor knowingly committed government interference by concealing the findings of the atomic absorption test kit result no. H9707609-C from []Appellant prior to and after a specific request was made for this evidence meets [sic] 42 Pa.C.S.A. § 9543(a)(2)?

(Appellant's Brief, at 4) (unnecessary capitalization omitted).

Before we are able to consider the merits of Appellant's claims on appeal, we must determine whether the PCRA court properly determined that his petition was untimely, and that, therefore, it did not have jurisdiction to decide its merits.  (**See** Order, 4/15/16; PCRA Ct. Op., at 1).

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level.  This review is limited to the findings of the PCRA court and the evidence of record.  We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.  This Court may affirm a PCRA court's decision on any grounds if the record supports it.  We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record.  However, we afford no such deference to its legal conclusions.  Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa. Super. 2013), *appeal denied*, 64 A.3d 631 (Pa. 2013) (citations omitted).

---

2 **Brady v. Maryland**, 373 U.S. 83 (1963).

Here, the PCRA court found that Appellant's second PCRA petition was untimely and that he failed to plead and prove any exception to the PCRA time-bar. (*See* PCRA Ct. Op., at 3-4). We agree.

It is well-settled that:

> A PCRA petition, including a second or subsequent one, must be filed within one year of the date the petitioner's judgment of sentence became final, unless he pleads and proves one of the three exceptions outlined in 42 Pa.C.S.[A.] § 9545(b)(1). A judgment becomes final at the conclusion of direct review by this Court or the United States Supreme Court, or at the expiration of the time for seeking such review. 42 Pa.C.S.[A.] § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional; therefore, a court may not address the merits of the issues raised if the petition was not timely filed. The timeliness requirements apply to all PCRA petitions, regardless of the nature of the individual claims raised therein. The PCRA squarely places upon the petitioner the burden of proving an untimely petition fits within one of the three exceptions. . . .

*Commonwealth v. Jones*, 54 A.3d 14, 16-17 (Pa. 2012) (case citations and footnote omitted).

In the case *sub judice*, Appellant's judgment of sentence became final on February 27, 2006, when the United States Supreme Court denied his petition for writ of *certiorari*. *See* 42 Pa.C.S.A. § 9545(b)(3); *see also Commonwealth v. Yarris*, 731 A.2d 581, 586 (Pa. 1999). Therefore, he had one year from that date to file a petition for collateral relief unless he pleaded and proved that a timing exception applied. *See* 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Hence, Appellant's current petition, filed on September 3, 2015, is untimely on its face unless he pleads and proves one of the statutory exceptions to the time-bar.

Section 9545 of the PCRA provides only three exceptions that allow for review of an untimely PCRA petition: (1) the petitioner's inability to raise a claim because of governmental interference; (2) the discovery of previously unknown facts that would have supported a claim; and (3) a newly-recognized constitutional right. **See id.** When a petition is filed outside the one-year time limit, petitioners must plead and prove the applicability of one of the three exceptions to the PCRA timing requirements. **See Commonwealth v. Johnston**, 42 A.3d 1120, 1126 (Pa. Super. 2012) ("If the petition is determined to be untimely, and no exception has been pled and proven, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the petition.") (citation omitted). Also, a PCRA petition invoking one of these statutory exceptions must "be filed within [sixty] days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Here, Appellant attempts to argue the applicability of the after-discovered facts and governmental interference exceptions to the PCRA's time-bar on the basis of the Commonwealth's alleged **Brady** violation. **See id.** at § 9545(b)(1)(i), (ii). Specifically, Appellant argues that the Commonwealth denied the existence of any gunpowder residue test results on the basis that it elected not to pursue testing, but that he later discovered they did exist when he obtained them directly from the laboratory. (**See** Appellant's Brief, at 8-11).

- 5 -

As a preliminary matter, we note that the issue regarding the exculpatory nature of the gunshot residue test results was previously litigated.

Section 3544 of the PCRA provides, in pertinent part, that:

[A]n issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.

42 Pa.C.S.A. § 9544(a)(2), (3). Further, "it is well-settled that a PCRA petitioner cannot obtain additional review of previously litigated claims by presenting new theories of relief . . . ." **Commonwealth v. Sneed**, 45 A.3d 1096, 1112 (Pa. 2012) (citation omitted).

In addressing Appellant's first PCRA petition, a panel of this Court observed:

In his third issue, Appellant argues the Commonwealth withheld exculpatory evidence of gunshot residue test results, which would have proven Appellant did not fire the weapon used to kill the victim. Appellant contends the Commonwealth's suppression of this evidence violated **Brady**, **supra**, which prohibits the withholding of evidence favorable to the accused, regardless of whether bad faith was involved in the Commonwealth's decision not to use the evidence. Appellant claims the Commonwealth's decision not to procure the test results after Appellant pleaded guilty to attempted murder compromised Appellant's ability to present an effective defense at the homicide trial. Appellant concludes the prosecution violated his due process right to a fair trial by suppressing exculpatory evidence.

Instantly, . . . Appellant was convicted of being either the principal or an accomplice in the victim's murder. Thus, the gunshot residue test results would not necessarily have

exculpated Appellant of the charges against him, even if the results were to show Appellant was not the shooter.

(*Commonwealth v. Brisbon*, No. 2187 EDA 2006, unpublished memorandum, at **14-15 (Pa. Super. filed Oct. 15, 2007) (one case citation omitted)).

We recognize that Appellant's claim in his first PCRA petition was slightly different than the one raised herein. In his first petition, he maintained that the Commonwealth's *Brady* violation was its decision not to perform gunshot residue testing. (*See id.*). Here, Appellant argues that the Commonwealth committed a *Brady* violation when it misrepresented that test results did not exist, when, in fact, they did. (*See* Appellant's Brief, at 4, 8-11). However, regardless of whether the results did or did not exist, the issue of whether they could be exculpatory has been previously litigated, and Appellant cannot argue that issue again under the guise of new legal theories. *See Sneed*, *supra* at 1112.

Moreover, even if we did not consider Appellant's issue previously litigated, we have undertaken our own review and conclude that he fails to establish either the governmental interference or after-discovered fact exception to the timeliness requirements. (*See* Appellant's Brief, at 8-11).

It is well-settled that a *Brady* violation can fall within the governmental interference exception. *Commonwealth v. Breakiron,* 566 Pa. 323, 330-31, 781 A.2d 94, 98 (2001). However, . . . Appellant . . . must plead and prove that the information could not have been discovered earlier with the exercise of due diligence. *Id.* Further, in order to prevail under the newly discovered evidence exception, Appellant must plead

and prove that the facts upon which the claim is predicated were unknown to him and could not have been ascertained earlier by the exercise of due diligence. *Commonwealth v. Bronshtein*, 561 Pa. 611, 752 A.2d 868 (2000). In addition Appellant must show that these new facts constitute "exculpatory evidence" that "would have changed the outcome of the trial if it had been introduced." [] *Yarris*, [*supra* at 591].

*Commonwealth v. Sattazahn*, 869 A.2d 529, 535 (Pa. Super. 2005).

In this case, we recognize that the trial court's December 20, 2005 order denied Appellant's request for the production of the laboratory results under the mistaken belief that they did not exist, where the Commonwealth did not request that they be performed. (*See* Order, 12/20/05). However, Appellant fails to establish that he acted with due diligence to obtain the results, which he failed to request until approximately ten years after the court's order, and over fifteen years after the laboratory report actually was prepared. (*See* Appellant's Brief, at 8-11; Pennsylvania State Police Bureau of Forensic and Criminal Identification Lab Report H9707609-C, 3/16/98). Therefore, because Appellant has not established that he acted with due diligence, he has failed to plead and prove the applicability of the governmental interference exception. *See Sattazahn*, *supra* at 535.

We also conclude that the laboratory results do not fall under the newly discovered facts exception because they are not exculpatory or material. As the PCRA court explained:

> Appellant was found guilty as either the principal or an accomplice in Mr. Cannon's murder. A principal and his accomplice share equal responsibility for their criminal acts. *See Commonwealth v. Cox*, 686 A.2d 1279, 1286 (Pa. 1996)[,

*cert. denied*, 522 U.S. 999 (1997)]. Accordingly, whether Appellant actually fired the shots that ultimately killed Mr. Cannon, and/or whether or not gunshot residue was found on his hands was immaterial to Appellant's guilt in this case. [Therefore,] . . . the evidence offered would not be considered "exculpatory evidence" that "would have changed the outcome of the trial[.]" 42 Pa.C.S.A. § 9543(a)(2)(vi)[.] . . .

(PCRA Ct. Op., at 3-4) (case citation formatting provided).

We agree with the PCRA court. In fact, the laboratory report obtained by Appellant stated: "The above results do not indicate [Appellant] had or had not recently discharged a firearm; they simply indicate the barium and antimony present on [his] hands . . . at the time when the swabbings were taken was of no significance." (Pennsylvania State Police Bureau of Forensics and Criminal Identification Lab Report H9707609-C, 3/16/98). Therefore, not only are the results immaterial to the crime charged, they are not exculpatory and do not make it likely that the jury would have reached a different result if they had been available at the time of trial. *See Sattazahn*, *supra* at 535. Accordingly, the trial court did not abuse its discretion when it found that Appellant failed to plead and prove the applicability of the after-discovered facts exception to the PCRA time-bar. *See id.*

For all of the foregoing reasons, where the laboratory test results were neither exculpatory nor material, and Appellant failed to exercise due diligence in obtaining them, we conclude that he has failed to plead and prove the applicability of a timeliness exception. *See Sattazahn*, *supra* at

535. The PCRA court properly dismissed his petition. ***See Rykard**, **supra***
at 1183*.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/29/2017