J-S02002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMAR S. ROBINSON | : | |
| | : | |
| Appellant | : | No. 909 EDA 2024 |

Appeal from the PCRA Order Entered February 19, 2024
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001347-2015

BEFORE: LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, P.J.:　　　　　　　　**FILED JUNE 30, 2025**

Omar S. Robinson appeals from the order, entered in the Court of Common Pleas of Northampton County, denying, as untimely and following a hearing, his amended petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After review, we affirm.

This Court previously summarized the facts of this case as follows:

On November 23, 2012, the narcotics division of the Easton Police Department was involved in an ongoing investigation targeting the home of Corey Reavis [(Reavis)]. That day, officers conducted a controlled purchase of heroin from Patrick Hughes [(Hughes)] using a confidential informant. Police officers observed Hughes leave Reavis's home, walk to the informant, engage in a brief hand-to-hand transaction, and return to Reavis's home. When Hughes returned to Reavis's home, police observed Hughes interact with individuals on the front porch, including [Robinson]. Police took photographs of [Robinson], Hughes, and the transaction. Police also observed [Robinson]'s minivan parked outside the residence.

Later that day, [Robinson] and Hughes shot and killed Ervin Holton ([]Victim[]) in Easton. A witness who was driving near the scene

called 911 to report the shooting. [The witness] stated that, after hearing the gunshots, she saw two individuals in dark clothing running toward a nearby minivan. The Victim died from multiple gunshot wounds; ballistics evidence confirmed that there were two shooters.

During the subsequent investigation, detectives from the Easton Police Department obtained consistent surveillance video that showed two individuals exit a minivan one block from the crime scene, walk towards the location of the shooting, and shortly thereafter, run back towards the minivan and drive away. Police officers also learned that [Robinson]'s girlfriend, Lisa Doorley [(Doorley)], owned the minivan.

When police officers located the minivan at [Robinson]'s home, which he shared with Doorley, [Robinson] confirmed that only he and Doorley drive the minivan, and that he did not allow anyone else to drive the minivan. Upon confirming that he had been driving the minivan on the night of the murder, [Robinson] started crying. Police searched the minivan with Doorley's consent and found gunshot residue on the steering wheel and the driver's side interior door handle.

Homicide detectives also learned that [Robinson] and Hughes had spent much of the day together before the murder. Reavis confirmed that he had been hanging out with [Robinson] and Hughes that day. Reavis admitted that he had driven and dropped off the Victim at a store near the scene of the murder shortly before [Robinson] and Hughes murdered him.

Also, cell phone records from [Robinson] and Hughes confirmed their whereabouts in south Easton, where the shooting occurred, and their close proximity to the area and each other when they placed the calls. The eyewitness called 911 at 5:39 P.M., and the cell phone records showed that [Robinson] and Hughes made numerous calls to Reavis before and after the murder. All calls stopped at the precise time of the shooting, consistent with the surveillance video.

During the investigation, Hughes provided several different, inconsistent, and unsubstantiated alibis to police investigators. After his arrest, Hughes made several incriminating statements to fellow inmates[:] (1) regarding his motive for the murder, and (2) claiming that he and his men were responsible for the murder.

Thereafter, the Commonwealth charged [Robinson] with [c]riminal [h]omicide and [c]riminal [c]onspiracy. In October

- 2 -

2015, the trial court granted the Commonwealth's [m]otion to try [Robinson] and Hughes jointly[, after having denied Robinson's pre[-]trial motion to sever].

*Commonwealth v. Robinson*, 2790 EDA 2017 (Pa. Super. filed April 2, 2019) (unpublished memorandum decision) (footnotes omitted).

In January 2017, Robinson and co-defendant Hughes were tried before a jury for homicide and criminal conspiracy. At trial, Gregory Mack testified for the Commonwealth. In an unrelated matter, Mack had been charged with various drug offenses and had entered a negotiated guilty plea to one count of possession with intent to deliver on November 14, 2014, and was sentenced to twelve months of probation. Macks' criminal docket indicates that, as part of his plea deal, felony charges were withdrawn and that he "cooperate[d] with [the] Commonwealth on [a] homicide case." Court of Common Pleas of Northampton, Criminal Docket (CP-48-CR-0002398-2014), at 3.

Following an eight-day trial, Robinson was convicted of first-degree murder and criminal conspiracy on January 20, 2017. On February 28, 2017, the court sentenced Robinson to life in prison without the possibility of parole for the murder conviction and a concurrent term of 20-40 years' incarceration for the conspiracy conviction. Robinson filed a timely post-trial motion seeking a new trial, which was denied on August 4, 2017. Robinson filed a timely direct appeal; our Court affirmed his judgment of sentence on April 2, 2019. *See Robinson*, *supra*. Robinson filed a petition for allowance of appeal which our Supreme Court denied on September 3, 2019. *See id.*, 217 A.3d 788 (Pa. 2019) (Table).

On April 30, 2020, Robinson filed a timely first PCRA petition *pro se*. PCRA counsel was appointed and an amended petition was filed. Counsel filed a "No Merit" brief and accompanying motion to withdraw. Following an evidentiary hearing, the court dismissed Robinson's petition on January 27, 2021, and granted counsel's request to withdraw. Robinson filed several *pro se* motions, as well as a timely appeal from the dismissal of his PCRA petition. On March 1, 2021, Robinson filed a collateral appeal.[1] On January 10, 2022, our Court affirmed the trial court's order dismissing Robinson's PCRA petition. *See id.*, 497 EDA 2021 (Pa. Super. filed Jan. 10, 2022) (unpublished memorandum decision). On February 9, 2022, Robinson filed another PCRA petition. However, on March 17, 2022, the trial court entered an order indicating that Robinson's petition was filed prematurely because a petition for allowance of appeal regarding his prior PCRA petition was still pending before the Pennsylvania Supreme Court; thus, the court lacked jurisdiction to consider it. *See* Order, 3/17/22; *see also Commonwealth v. Montgomery*, 181 A.3d 359, 364 (Pa. Super. 2018) (en banc) (PCRA court may not entertain new PCRA petition when prior petition is still under appellate review and, thus, not final). On July 27, 2022, the Pennsylvania Supreme

_____

[1] In November 2021, Robinson filed a "Motion for Disclosure of After-Discovered Evidence by the District Attorney," citing Pa.R.Crim.P. 305 and **Brady**, and averring that the Commonwealth possessed exculpatory evidence that had not been disclosed to him and, "[f]urther, on 9/28/2021, [Robinson] petition[ed] the[e trial c]ourt for transcripts in [Mack's] case . . . and was then directed to petition the [c]ourt for said transcripts." Motion for Disclosure, 11/24/21, at 1. Because Robinson's collateral appeal was then pending before this Court, the trial judge issued an order indicating that it could not rule on his motion because it lacked jurisdiction. *See* Order, 12/7/21.

Court denied Robinson's petition for permission to appeal. *See id.*, 282 A.3d 1129 (Pa. filed 2022) (Table).

On September 30, 2022, Robinson filed a *pro se* PCRA petition. The court appointed Alfred Stirba IV, Esqiure, as counsel. On December 20, 2022, Attorney Stirba filed a "No Merit Letter" letter brief along with an accompanying *Turner*/*Finley*[2] motion to withdraw as Robinson's court-appointed PCRA counsel. On January 5, 2023, the trial court issued Rule 907 notice of its intent to dismiss Robinson's PCRA petition, advised Robinson of his right to proceed *pro se* or with private counsel, and granted Attorney Stirba's request to withdraw as court-appointed counsel. *See* Order, 1/5/23. Robinson filed several *pro se* documents following the court's Rule 907 notice. On March 20, 2023, Attorney Drummund B. Taylor, Esquire, was appointed as PCRA counsel. Following an issue-framing conference held on April 30, 2023, the court granted Robinson's petition to file an amended PCRA petition *nunc pro tunc*. On May 12, 2023, Attorney Taylor filed a *nunc pro tunc* amended PCRA petition. On July 24, 2023, the trial court held a PCRA hearing where Robinson was the sole witness.[3] On February 9, 2024, the trial court dismissed Robinson's petition as untimely.

_____

[2] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (en banc).

[3] Of note, at the PCRA hearing Robinson did not call any of his prior attorneys (trial, appellate, or PCRA counsel) to testify regarding whether they had investigated if Mack had a prior criminal record, plea agreements, or had made any deal with the Commonwealth in connection with his testimony at Robinson

*(Footnote Continued Next Page)*

Robinson filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Robinson raises the following issues for our consideration:

(1) Did the PCRA court err when it dismissed [Robinson's] PCRA petition as untimely where [Robinson] invoked an exception under 42 Pa.C.S.[A. §§] 9545(b)(1)(i)[-]((ii) and [] (b)(2)?

(2) Did the PCRA court err in concluding that the Commonwealth's failure to disclose relevant and potentially exculpatory information regarding the prior criminal record and existing parole obligations of [Mack,] a Commonwealth witness[,] at or prior to trial was not a violation of [Robinson's] right to due process as afforded under both the Constitution of the United States of America and the Constitution of the State of Pennsylvania?

(3) Did the PCRA court err in concluding that [Robinson] failed to demonstrate the ineffectiveness of [his] trial counsel in failing to investigate the criminal record, probation[ary] status, negotiated plea deals[,] and ongoing obligations [of] Commonwealth [] witness [] Mack[,] which resulted in the deprivation of [Robinson's] right to due process, a fair trial[,] and other protections afforded [him] under the Constitutions of the United States of America and the [Commonwealth] of Pennsylvania?

(4) Did the PCRA court err in concluding that [Robinson] failed to demonstrate the ineffectiveness of PCRA counsel Stirba in his failure to consult with [Robinson], or fully investigate [Robinson's] allegations regarding the evidence of a prior criminal record, plea deal[,] and parole status of Commonwealth[] witness [] Mack[,] thus depriving [Robinson] of the protections afforded under the Sixth Amendment to the Constitution of the United States of America?

_____

and Hughes' trial. *See* N.T. PCRA Hearing, 7/24/23, at 12 (trial judge asking defense counsel, "But what witnesses are you going to present to tie up your position that something [] Mack pled to in another case caused or impacted, in any way, the testimony that he gave in this homicide trial?").

(5)    Did the PCRA court err in concluding that the circumstances alleged by [Robinson] are insufficiently exceptional to warrant further discovery related to an investigation into transcripts and documentation of the parole proceedings and any ongoing obligations of Commonwealth witness [] Mack at the time of trial?

Appellant's Brief, at 3.

When reviewing an order denying PCRA relief, we must "determine whether it is supported by the record and is free of legal error." *Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017). "We will not disturb the court's factual findings unless there is no support for them in the certified record." *See Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001).

Prior to reaching the merits of Robinson's appeal, we must first determine whether the PCRA court had jurisdiction to consider his initial PCRA petition. Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment is final unless the petition alleges, and the petitioner proves, an exception to the timeliness requirement. *See* 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Any petition invoking an exception provided in subsection 9545(b)(1) "shall be filed within [60 days] of the date the claim could have been presented." *Id.* at § 9545(b)(2).[4]

---

[4] Section 9545(b)(2) was amended on October 24, 2018, effective in 60 days (Dec. 24, 2018), extending the time for filing from sixty days of the date the claim could have been presented, to one year. The amendment applies to claims arising on December 24, 2017, or thereafter. *See* Act 2018, Oct. 24, P.L. 894, No. 146, § 3. Here, because Robinson's *Brady* claim arose at the time of trial in January 2017, the amendment does not apply.

Robinson concedes that his petition is untimely.   *See* 42 Pa.C.S.A. § 9545(b)(1) (PCRA petition "shall be filed within one year of the date the judgment of sentence becomes final[.]"); *see also* 42 Pa.C.S.A. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.").   However, he pleads two statutory exceptions to the PCRA time-bar, namely the governmental interference and newly-discovered facts exceptions.  *See id.* at §§ 9545(b)(1)(i) (petitioner must plead and prove that failure to raise claim previously was result of interference by government officials); *id.* at § 9545(b)(1)(ii) (facts upon which claim predicated were unknown to petitioner and could not have been ascertained by exercise of due diligence).

Specifically, Robinson alleges that at the time of his trial in 2017, the Commonwealth failed to disclose that one of its witnesses, Mack, had a "prior criminal record, parole status[,] and ongoing parole-related obligations to the Commonwealth."  Appellant's Brief, at 7.  Robinson claims that "such failure to disclose this potentially exculpatory evidence and information violated [his] right to due process and a fair trial" under the United States and Pennsylvania constitutions.  Robinson further argues that this evidence "would have served to implicate the motives behind witness Mack's testimony and permit an effective and searching cross-examination by defense counsel that could have

impeached Mack's testimony and/or convinced the jury that said testimony was unreliable." *Id.* at 9.

Robinson's co-defendant, Hughes, raised a similar after-discovered evidence claim in his first, *pro se* PCRA petition, filed on December 11, 2020. Specifically, Hughes argued that the Commonwealth violated **Brady**[5] by not disclosing before trial that Mack had received favorable treatment in exchange for testifying against him. **See Commonwealth v. Hughes**, 1068 EDA 2022, at *4 (Pa. Super. filed July 26, 2023) (unpublished memorandum decision). The trial court denied the petition following an evidentiary hearing. At Hughes' PCRA hearing, Assistant District Attorney Patricia Mulqueen, the assigned prosector for Mack's drug charges, testified that her decision to give Mack a plea deal was not based on his agreement to testify for the prosecution at Robinson and Hughes' murder trial and that "Mack's cooperation with the prosecution in [the] homicide case had 'nothing to do with the guilty plea'" and that "if Mack's guilty plea had been conditioned on his testimony at [Hughes and Robinson's] trial, he would not have been allowed to enter his guilty plea before [Hughes'] trial began." **Id.** at *5.

On appeal, our Court affirmed the denial of Hughes' petition, finding that: (1) Hughes did not establish a **Brady** violation where he did not show

---

[5] **Brady v. Maryland**, 373 U.S. 83 (1963). The Pennsylvania Supreme Court has explained that "there are three necessary components that demonstrate a violation of the **Brady** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." **Commonwealth. v. Lambert**, 884 A.2d 848, 854 (Pa. 2005), citing **Commonwealth v. Burke**, 781 A.2d 1136, 1142 (Pa. 2001).

that the prosecution had agreed to treat Mack with leniency if he testified for the Commonwealth at trial; (2) ADA Mulqueen was credible in testifying Mack's plea deal was not based on his cooperation with the prosecution of Hughes and Robinson's trial; (3) given the fact that Mack entered his guilty plea *before* Hughes and Robinson's trial, ADA Mulqueen was credible in her testimony that her plea offer was not contingent on his testimony at the homicide trial; and, (4) even if the Commonwealth violated **Brady**, Hughes failed to show that trial counsel could not have obtained the information prior to the conclusion of his homicide trial by the exercise of due diligence where: (i) Mack was sentenced on his guilty plea more than two years before he testified at the homicide trial; (ii) Mack's sentencing sheet was available to view as publicly filed criminal docket information; (iii) any information regarding an alleged plea agreement between the Commonwealth and Mack would be used solely to impeach Mack's credibility; and (iv) Hughes has not demonstrated he was prejudiced by Commonwealth's failure to inform the defense regarding the details of Mack's plea agreement before trial. **See Hughes**, **supra** at *9-11.[6] **See also** N.T. Robinson's PCRA Hearing, 7/24/23,

_____

[6] Notably, unlike the instant case in which Robinson invoked the newly-discovered evidence exception to save his otherwise untimely petition, the issue in **Hughes** was framed as an after-discovered evidence claim because Hughes' petition was timely filed. **See Commonwealth v. Bennett**, 930 A.2d 1264 (Pa. 2007) (although PCRA's subsection 9545(b)(1)(ii) analysis does not require any merits analysis of underlying claim, subsection 9543(a)(2)(vi) after-discovered evidence claim requires petitioner prove evidence would be exculpatory and would have changed outcome of trial). Under both subsections, however, a petitioner must prove that he could not have obtained the after-discovered evidence or new facts earlier by the exercise of due diligence.

at 13 (trial court telling defense counsel "disposition of [Mack's] case should be available on a public docket").

In the instant case, Robinson testified at his PCRA hearing that "around 2020 . . . he first became aware of the possibility that [] Mack was on probation or parole or may [have] be[en] subject to an agreement at the time [he testified]." N.T. PCRA Hearing, 7/24/23, at 3. Robinson testified that on November 23, 2020, his sister went to Northampton County to retrieve Mack's plea colloquy records. *Id.*

In his appellate brief, Robinson states that, despite repeated attempts by his family members to provide him a copy of Mack's criminal record, he "finally received a copy of [it] in July[] 2021." Appellant's Brief, at 7.[7] Robinson asserts that his efforts to "obtain [the] exculpatory evidence and information . . . were, at times, thwarted and/or delayed by various

_____

[7] Robinson includes in his appellate brief (but did not attached to his *pro se* second PCRA petition or amended second petition), as "Exhibit 1," an affidavit of his sister, dated September 13, 2023, stating that she went to the Northampton County Courthouse and obtained Mack's guilty plea colloquy on November 23, 2020, and unsuccessfully tried to send it to him in prison. She states that then she gave the information to Tracey Robinson "so she could try to send said information [to Robinson]." Affidavit of Lyann Hope, 9/13/23. He also attaches to his brief the affidavit of Tracey Robinson, who states that on July 14, 2021, she sent Mack's guilty plea information to Robinson and confirmed that it "was received by SCI-Albion, . . . but on 7/27/21, said information was confiscated by the Security Office at SCI[-]Albion." Affidavit of Tracey Robinson, 9/13/23. Robinson also attached to his second *pro se* PCRA petition a copy of a letter from the Chief Grievance Officer at SCI-Albion, dated November 29, 2021, stating that Robinson's mail from Tracey Robinson "should not have been confiscated" because "the documents in question are permissible if necessary to represent [himself] *pro se*." **See** Final Appeal Decision, Secretary's Office of Inmate Grievances & Appeals, SCI-Albion, 11/29/21.

government officials in the form of court administrators and members of the correctional staff at the Pennsylvania State Institution." *Id.* at 7-8. In sum, Robinson claims that "the evidence related to [Mack's] criminal record and ongoing parole obligations should have been disclosed by the Commonwealth or, barring that, uncovered by Appellant's trial counsel prior to or during trial." *Id.*

In *Commonwealth v. Sattazhan*, 869 A.2d 529 (Pa. Super. 2005), our Court stated:

> It is well-settled that a *Brady* violation can fall within the governmental interference exception. *Commonwealth v. Breakiron*, [] 781 A.2d 94, 98 ([(Pa.)]2001). However, [a defendant] only has sixty days after the discovery of the information to file his PCRA and he must plead and prove that the information **could not have been discovered earlier with the exercise of due diligence**. *Id.* Further, in order to prevail under the newly discovered evidence exception, [a defendant] must plead and prove that the facts upon which the claim is predicated were unknown to him and **could not have been ascertained earlier by the exercise of due diligence**. *Commonwealth v. Bronshtein*, [] 752 A.2d 868 ([(Pa.)] 2000). In addition [a defendant] must show that these new facts constitute "exculpatory evidence" that "would have changed the outcome of the trial if it had been introduced." *Commonwealth v. Yarris*, [] 731 A.2d 581 ([(Pa.)] 1999).

*Id.* at 534 (emphasis added; footnote omitted).

First, we note that Robinson's claim of prior counsels' ineffectiveness for failing to raise the *Brady* issue as it relates to Mack's 2014 guilty plea and criminal record does not constitute an exception to the PCRA time bar. *See* 42 Pa.C.S.A. § 9545(b)(4) ("For purpose of this subchapter, 'government officials' shall not include defense counsel, whether appointed or retained.");

*see also Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 785 (Pa. 2000) (allegation that PCRA counsel was ineffective for failing to present available claims does not excuse compliance with PCRA's timeliness requirements). Furthermore, Robinson's argument that "staff members of the State Correctional Institution" blocked his family member's efforts to provide him Mack's criminal records is unavailing. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1095 (Pa. 2010) (prison conditions that were not shown to be illegal did not constitute timeliness exception to PCRA); *see also Commonwealth v. Moody*, 293 A.3d 641 (Pa. Super. 2023) (Table)[8] (defendant did not establish due diligence, under governmental interference or newly discovered facts exceptions, where he claimed prison officials interfered with his effort to timely file PCRA petition by confiscating his prison mail; defendant did not establish prison's mail regulations were illegal or unconstitutional interferences by government officials and record lacked any indication defendant alerted either PCRA court or appellate court of his difficulty in obtaining PCRA materials despite having been aware of mailing issue three years earlier).

Finally, and most convincingly, Robinson's contention that he was unable to obtain the information about Mack sooner because "[he] has been incarcerated in a facility that is nearly four hundred miles from the county where the documents and evidence are available the public" is belied by the

_____

[8] *See* Pa.R.A.P. 126(b)(2) (non-precedential decisions of Superior Court filed after May 1, 2019 may be cited for persuasive value).

record in his co-defendant's case. *See* Pa.R.E. 201 (judicial notice of adjudicative facts). Robinson is currently incarcerated in the SCI-Albion; Robinson's co-defendant, Hughes, is imprisoned in SCI-Huntingdon. In *Hughes*, Robinson's co-defendant, who is housed almost 200 miles from Northampton County, was able to obtain Mack's criminal record in late 2020. Robinson did not obtain the documents until more than one year later, on December 22, 2021. *See* N.T. PCRA Hearing, 7/24/23, at 5. Thus, we conclude that Robinson has not pled and proven that the information regarding Mack's criminal record could not have been obtained earlier with the exercise of due diligence. Because he has not pled and proven an exception to the PCRA time bar, the trial court properly denied his untimely petition.

In his final claim, Robinson alleges that the PCRA court erred in denying his request for discovery. In particular, Robinson contends that the court incorrectly determined that he did not allege exceptional circumstances to warrant further discovery related to "the investigation into the transcripts and documentation of parole proceedings and the ongoing obligations of witness Mack to the Commonwealth at time of trial." Appellant's Brief, at 44.

Under the PCRA "[n]o discovery, at any stage of proceedings under [subchapter 9545], shall be permitted except upon leave of court with a showing of **exceptional circumstances**." 42 Pa.C.S.A. § 9545(d)(2) (emphasis added); *see also* Pa.R.Crim.P. 902(E)(1) ("Except as provided in paragraph (E)(2) [relating to a first counseled petition in a death penalty case], no discovery shall be permitted at any stage of the proceedings, except

upon leave of court after a showing of exceptional circumstances."). The PCRA and the Pennsylvania Rules of Criminal Procedure do not define the term "exceptional circumstances." Rather, it is for the trial court, in its discretion, to determine whether a case is exceptional and discovery is therefore warranted. **Commonwealth v. Dickerson**, 900 A.2d 407, 412 (Pa. Super. 2006). The denial of a request for post-conviction discovery is reviewed for an abuse of discretion. **Commonwealth v. Collins**, 957 A.2d 237, 272 (Pa. 2008).

Here, we find that the trial court did not commit an abuse of discretion when it denied Robinson's request for post-conviction discovery where: (1) his PCRA petition is untimely; (2) he has not proven an exception to the PCRA time-bar; and (3) the documents he requested were relevant to the merits of his untimely claims. **See Commonwealth v. Edmiston**, 65 A.3d 339, 353 (Pa. 2013). Moreover, as the trial court acknowledged at Robinson's PCRA hearing, he failed to file a formal motion for discovery, instead putting his discovery request in his PCRA petition, relief that the court acknowledged is not properly sought via a PCRA petition.[9] **Cf. Commonwealth v. Frey**, 41 A.3d 605 (Pa. Super. 2012) (PCRA court properly granted post-conviction motion for discovery where 2003 murder conviction case involved unusual facts, including that forensic report at issue did not exist until 2008 (after

_____

[9] **See** N.T. PCRA Hearing, 7/24/23, at 16 (citing language in Robinson's amended second PCRA petition that "petitioner requests this [c]ourt leave to discover whatever currently remains of this evidence, as it may exist or be created for electronic record"); **see also** Amended Second PCRA Petition, 5/12/23, at ¶ 18.

victims' remains uncovered), report had not been given to defendant until 2010, and Commonwealth's own forensic report revealed evidence that "could arguably suggest multiple persons were involved in [victim's] shooting death").[10]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2025

---

[10] Even if Robinson had proven one of the subsection 9545(b)(1) timeliness exceptions to the PCRA, his untimely petition still would not be saved. More than two months elapsed after the Pennsylvania Supreme Court denied allowance of appeal from the denial of Robinson's first PCRA petition—which finalized Robinson's first petition—and the date that Robinson filed his current (second) PCRA petition. Thus, Robinson failed to file his petition "within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). *See supra* at n.3.